## LUNDY *vs.* THE STATE.

Shooting the cow of another in the woods, taking possession of her when shot, handling the carcass so as to progress half way in skinning it, and leaving the carcass only when frightened by the bark of a dog and the apprehended approach of men, constitute sufficient evidence of simple larceny, including, in legal contemplation, the carrying away, as well as the taking, of the personal goods of another. The slightest moving from the place in which the goods are left by the owner is sufficient proof of asportation, and in thus shooting, handling and skinning this cow, she must have been moved from the exact place her owner willed her to be, and put in another place, however near, where the trespassers for a time exercised dominion over her, evidently with intent to steal.

Criminal law. Before Judge GRICE. Bibb Superior Court. October Term, 1877.

Lundy was convicted of simple larceny. He moved for a new trial, which was refused, and he excepted. For the other facts see the opinion.

H. C. ERWIN; DESSAU & STROHECKER, for plaintiff in error.

C. L. BARTLETT, solicitor general, by W. A. LOFTON, for the state.

JACKSON, Judge.

The sole question made in this case is whether or not the asportation of the cow alleged to have been stolen is sufficiently proven to authorize the verdict.

The facts are, that the cow was shot in the woods, and when about half skinned, the defendant and his companion became frightened and left the carcass of the cow before it was wholly skinned, or any part of the cow or skin actually carried off the ground where the cow was shot.

The sum of the authorities is to the effect, that whilst there must be a carrying away of the *corpus delicti* to com-

plete the larceny, the slightest change of location, whereby complete dominion of the article is transferred from the true owner to the trespasser, is sufficient evidence of the asportation : 2 Russell on Crimes, 152, and cases cited there.

This cow was alive, in the woods, under the dominion and in the legal possession of her owner. Whilst in this condition, she was shot by the defendant, who, with his companion, took possession. of her, handled her, moved her about sufficiently to accomplish the task of skinning her to a considerable extent, had complete dominion over her, and would have taken her off, skin and all, in all human probability, but for their fright at the barking of a dog, and the apprehended approach of a number of men. The position of the cow must have been changed from that in which her owner left her free to move. If she was shot standing or running, it is clear that she changed position ; if she was lying down, her position, in all likelihood, was changed when she was shot ; in the handling her to be skinned, as far as they had progressed, the trespassers must have moved the carcass about somewhat ; they had taken her out of the dominion of her owner, and deprived her not only of her freedom of locomotion, but of her position, where her owner willed that she should remain at her will ; and their act of skinning her is conclusive that her being shot by them was not merely malicious mischief, but that the shot was fired with the felonious intent to appropriate her to their own use—to eat beef which belonged to another without paying for it, or to sell it without title, or, perhaps, to do both—eat some and sell the balance.

Strict law, as we understand it, authorized the jury to say that there was a sufficient taking and carrying away to constitute larceny, and the policy of the state demands its rigid enforcement.

Judgment affirmed.