## 5910.   SMITH *v.* THE STATE.

Selling the goods of another without actually taking possession of them is not a sufficient taking to constitute larceny. Where one has neither actual nor constructive possession of the property of another, but points it out, claims it as his own, and actually sells it as his property and receives payment therefor, he is not guilty of larceny, in the absence of some act constituting an asportation. But where in such a case the purchaser takes the property into his own possession in good faith. believing that it is the property of the seller, and removes it to any distance whatever, the seller is guilty of larceny, since the purchaser takes and removes the property as his innocent agent, and the act of the purchaser amounts to an asportation by the seller.

DECIDED NOVEMBER 17, 1914.

Indictment for larceny; from Early superior court—Judge Worrill. July 3, 1914.

*A. H. Gray,* for plaintiff in error.

*B. T. Castellow,* solicitor-general, *R. R. Arnold,* contra.

WADE, J. Tom Smith was tried on an indictment charging him

with simple larceny, for that on a certain day in the year 1914, in the county of Early, he unlawfully, wrongfully, and fraudulently took and carried away, with intent to steal the same, a certain bale of lint cotton, baled and wrapped with jute bagging and metal ties, the personal property of C. C. Tarver, of the value of $48. The evidence of J. H. Moye, the sole witness for the State whose testimony directly connected the defendant with the cotton alleged to have been stolen, was in substance as follows: that on February 26, 1914, he was acting as manager of the Farmers Warehouse of Blakely, in Early county, and was in the office of the warehouse company, between 10 and 11 o'clock in the morning, engaged in writing; that there was a connecting door between this office and the warehouse where the company stored cotton, and, hearing a rattling at the warehouse door, he went out into the main warehouse to see what caused the noise; that the rattling was at the big warehouse door, two big doors that came together, and the door was partially open—something like about two feet; that when he reached the main warehouse he found Tom Smith there, and Smith "had this bale of cotton;" that Smith was standing up and "had his hand on the bale of cotton," and no one else was standing there or in the warehouse; that "the bale of cotton was out between the scales and the door, about four or five feet between the scales and the door;" that, as Smith did not work at the warehouse, he asked Smith, "What are you doing there?" and Smith said he had a bale of cotton he wanted the witness to weigh; and when the witness inquired where Smith had ginned this bale, Smith said "at Joe Freeman's," and, when asked who sampled it, Smith said that Winston James had sampled the bale. The witness testified that the bale had been sampled, but it was an old sample, "it was sampled the day it was weighed for classification," and the witness himself had cut the bagging on the bale; that when he asked Smith where the bale had been ginned, the witness "glanced over and missed the bale of cotton from where it had been standing in the warehouse;" that it had been standing where the witness could see it every time he went in and out of the warehouse, and he saw it a dozen times a day or more; that the number of the bale was 9849, and was where the witness could see it constantly; that Smith said that James had bid ten cents on this cotton, and he wanted to see what he the witness would bid on it, and the witness told him to

come back in a few minutes; that Smith went out of the warehouse, but afterwards returned and sold the bale of cotton to the witness, and the witness issued to him a receipt for it, figured up the amount the cotton brought on the back of the receipt, and signed the Blakely Cotton Company's name to it, and Smith took this receipt to the bank, where, in accordance with their custom, the amount was paid to Smith, and the receipt was held as collateral against the buyer of the cotton; that the witness watched Smith and followed him down to the bank, and, when Smith received the money on the receipt, had him arrested. There was evidence showing that the title to the property was in C. C. Tarver, to whom an original receipt for bale No. 9849 had been issued, and the bale of cotton was clearly identified by Moye as the bale which had been in the warehouse for some time before it was purchased from Smith by Moye for the Blakely Cotton Company; and also there was evidence that there were no wagon tracks in front of the warehouse that morning, and that the warehouse door, where the company received cotton, had not been fully opened. Moye testified positively that the bale of cotton had been moved about 8 or 10 feet from the place in the warehouse where it had been stationed, to a point about 5 or 6 feet from the scales, and was standing in the first tier of cotton just across from the scales, head up, when the witness walked out into the warehouse. There was other testimony from Moye tending to explain how he was able to identify positively the particular bale of cotton, and nothing further from any source as to the asportation of the cotton by the defendant. The defendant in his statement simply denied any knowledge whatever as to the cotton or the transaction in question. The defendant was convicted, made a motion for a new trial, which was overruled, and thereupon brought the case to this court.

The motion for a new trial raises the point that there was a fatal variance between the allegations in the indictment and the proof, in that the indictment charged the defendant with simple larceny by taking and carrying away a certain bale of cotton, and there was no proof of any asportation whatever by the defendant; and hence it was not shown that he was guilty of the offense charged; and that if he was guilty of any crime, it was the offense of cheating and swindling. The first requisite of larceny is the taking of possession of the goods by the thief, and the act of taking possession involves

the complete assumption of physical control over the chattel. "If complete control is assumed and the goods are actually carried away, any, the least distance, it is enough, although the possession of the taker is immediately interrupted." 25 Cyc. 19. Larceny requires not merely taking possession of a chattel, but also a carrying away or asportation of the thing taken. Even though possession be taken, there can be no larceny without asportation, though a bare removal from the place where the goods are found is sufficient taking and carrying away. 25 Cyc. 22; *Lundy* v. *State,* 60 *Ga.* 143. "Selling the goods of another without actually taking possession of them is not sufficient taking to constitute larceny. Where one has neither actual nor constructive possession of the property of another, but points it out and purports to sell it, receiving payment therefor, he does not commit larceny, in the absence of some act constituting an asportation. So where a wrong-doer, without himself taking actual possession of it, sells a steer at large upon the range to one who never took possession, he was not guilty of larceny. And one who states to a pound-keeper that a certain animal in the pound is his, and sells it to the pound-keeper, who himself takes it out and turns it into his range, where it is afterward claimed by the rightful owner, is not thereby guilty of larceny. But where in such a case the purchaser takes the property so sold into his own possession in good faith, the seller is guilty of larceny, since the purchaser takes as his innocent agent, and the act of the purchaser amounts to a taking by the seller." 25 Cyc. 21.

Waiving for the moment the question as to whether any asportation was proved, it does not appear that Moye took the bale of cotton into his possession or into the possession of the Blakely Cotton Company "in good faith," believing that he had made a genuine purchase of property belonging to Smith; since it appears, from his testimony, that the purchase in question was made by him with full knowledge that the title to the cotton was not in Smith, and with the purpose of allowing Smith to carry out his fraudulent intent. It is true that any asportation, however slight, is sufficient to support the charge of larceny; and this court held, in the case of *Smith* v. *State,* 11 *Ga. App.* 197 (74 S. E. 1093), that "where a person fraudulently claims another's property as his own and sells it, and the purchaser thereupon takes possession of it and takes it away, after having paid the seller for it, this constitutes

an asportation of the property by the seller, through the innocent agency of the purchaser." It will be noted, from the use of the words "innocent agency of the purchaser," that this ruling has reference to a purchase made in good faith, and comes precisely under the rule cited above from 25 Cyc. 22. The party purchasing from the person fraudulently claiming the property of another must make the purchase in good faith, believing that the title to the property is in the person who sells to him, and must thereupon *take possession of the property and take it away,* in order that his asportation of the property may become in legal effect the asportation of the defendant. In *Smith* v. *State,* supra, this court further said: "Unquestionably, asportation, or the taking possession and carrying away of personal property alleged to have been stolen, is an essential element of the offense of simple larceny; and it has been held that where one has neither actual nor constructive possession of the property of another, but points it out and purports to sell it, receiving payment therefor, he does not commit larceny, in the absence of some act constituting asportation. Long *v.* State, 44 Fla. 134, 32 South. 870." And further, in the same decision, this court said: "But where in such cases the purchaser does take the property so sold into his own possession, in good faith, believing that it is the property of the seller, the seller is guilty of larceny, since the purchaser takes as his innocent agent, and the act of the purchaser amounts to a taking by the seller."

Here it appears that the defendant was standing by the bale of cotton when first discovered by the witness Moye, and that the defendant pointed out the cotton to Moye, as agent for the Farmers Warehouse Company, and requested a receipt for it, claiming it to be his own; and that he then sold to Moye, as agent for the Blakely Cotton Company, the receipt which Moye had issued to him in behalf of the warehouse company. Moye, it is true, stated that the cotton had been moved by some one from the place where he had seen it daily for several days, but he did not assert that the defendant moved the cotton, nor did any one else connect the defendant with its removal from where Moye had last seen it to the point "across from the scales" where it was situated when Moye first saw the defendant in the warehouse. It appears, from the evidence, that Moye issued to the defendant a receipt for this cotton, and thereafter, with the intent to entrap him in the perpetration of the

attempted fraud, purchased the cotton from him in behalf of the cotton company, and made some notation on the back of the receipt in order that the defendant might obtain the money thereon at the bank; but it nowhere appears, from the evidence of Moye, that the defendant ever at any time moved the cotton from the point where the bale was standing when Moye first saw him in the warehouse, to the scales, to be weighed, nor does it appear that the cotton was weighed by any one at this time. Had the defendant even moved the bale of cotton from the point where it was situated when Moye first saw him standing near it, to the scales, this might have been a sufficient asportation to sustain the charge of larceny, but it does not appear anywhere in the evidence that he ever moved the cotton any distance whatever. It does not appear that even Moye himself. moved it after he purchased it from the defendant for the cotton company; and had he done so, this could not have supplied the necessary asportation, since the purchase was made with full knowledge that the title to the cotton was not in the defendant; and hence the case would not come under the ruling in *Smith* v. *State,* hereinbefore quoted.

The defendant was undoubtedly guilty of an attempt to defraud some one, and this fact is made all the more obvious by his flat denial of any knowledge of any cotton transaction, without any explanation whatever; and it may be that he was guilty of larceny, since he may have actually moved the bale of cotton from its accustomed place in the warehouse to the point near the door, "across from the scales," where the bale was situated when Moye first saw him with it on the day charged in the indictment, but this fact does not appear from the evidence, nor is there any evidence of asportation by any person purchasing the cotton in good faith from him; and hence the verdict was without any evidence to support it.

*Judgment reversed. Broyles, J., not presiding.*