*Alexander & Gary,* contra.

---

## 3307. JOHNSON *v.* THE STATE.

1. Under an accusation which in the language of the statute charges larceny from the house, there may be, if the facts warrant it, a conviction of simple larceny; the latter offense being included in the former.
2. To complete the offense of larceny, the slightest change of location, whereby complete dominion of the property is transferred from the true owner to the trespasser, is sufficient evidence of asportation.
3. The evidence as to the existence of criminal intent is exceedingly weak and unsatisfactory; but, the intent with which an act is done being peculiarly a question of fact for determination by the jury, this court does not feel authorized to set aside the verdict on that ground.

DECIDED JUNE 7, 1911.

Accusation of larceny from house; from city court of Lexington —Judge Cloud. February 2, 1910.

Anthony Johnson was tried upon an accusation charging larceny from the house, and was convicted of simple larceny. His motion for a new trial being overruled, he excepted. Besides the general grounds, the motion for a new trial contains several special assignments of error. It is contended that the conviction of the offense of simple larceny was not authorized by the evidence; the facts showing that, if the accused was guilty of any offense, it was larceny from the house. It is further contended that the evidence failed to show that the cottonseed, which the accused was charged with stealing, were removed from the house, and therefore the proof does not correspond with the allegations in the accusation, and does not complete the crime as charged, or the crime of simple larceny as found by the verdict.

The evidence for the prosecution, briefly stated, is as follows: The prosecutor testified, that the accused lived on his farm and was employed by him as a tenant; that on the day of the alleged larceny he went down to his seed-house and saw the accused therein, and there was a sack of cottonseed close by him. "I asked him who put those seed in the sack, and he said he did. I asked him

what he was going to do with them, and he said he was going to feed them to his calf." The prosecutor then took him into custody and carried him to his storehouse, where he had him repeat in the presence of the prosecutor's brother and his clerk the same statement that the accused had made to him in reference to the cottonseed. The cottonseed-house was open, and consisted of two rooms, in one of which was a pile of cottonseed owned by the prosecutor. In the other room there were some cottonseed scattered on the floor, and these were owned by the brother of the prosecutor. The accused, with the sack, when discovered by the prosecutor, was in the room where the cottonseed were scattered on the floor. The sack held about 2 or 2½ bushels of seed, and was full, and the seed were worth about 50 cents a bushel. The prosecutor and his clerk kept the accused under arrest during the night in the storehouse. The next morning the brother of the accused came to the store, and he and the accused entered into a written agreement with the prosecutor. · The evidence does not clearly disclose the subject of this agreement; but it is reasonably inferable therefrom that the prosecutor, in consideration of not prosecuting the accused for the larceny, coerced him into making a contract to work for the prosecutor for 12 months as a laborer without wages. After the contract was made, the accused was released from custody, and he worked for the prosecutor for a month. The prosecutor, after he had thus secured the services of the accused as a laborer, induced the wife of the accused to assume the contract of rent which he had with her husband. The accused did not take any of the cottonseed out of the house, but they were left therein when he was detected and arrested by the prosecutor. The alleged larceny took place in March, and the prosecutor did not press the prosecution against the accused until the following August, after the accused had made and harvested his crop and paid the landlord his part.

The accused introduced no evidence, but stated to the jury that he was living on the prosecutor's place and owned a "little calf:" that he had nothing with which to feed the calf, and went up to the house where the cottonseed were stored, and gathered up some that were scattered on the floor; that he did not think the prosecutor intended to use those seed,. as in the other room there were two bales of cottonseed; that he thought that the seed left scattered on the floor were worthless and had been abandoned by the prose-

cutor, and for this reason he gathered them up and put them in a sack, but did not intend to steal them, and did not think he was stealing the seed, as he lived on the prosecutor's place, and the prosecutor knew he had nothing to feed his calf on; that he thought he was raking up off the floor waste seed which the prosecutor did not intend to use; that when the prosecutor came down and saw him in the seed-house, and asked him what he was doing, he told the prosecutor, and the prosecutor said, "I have got you now; come and go with me to my store;" that the prosecutor kept him there all night, and next morning told him that, if he would make a contract to work with him for 12 months without wages, he would settle the case, otherwise he would send him to the chain-gang for two years, that the judge would not impose any fine on him, but would do whatever he (the prosecutor) said about it; that under these circumstances he thought it was best to make the contract with the prosecutor, and did so, and began work the next day under the contract, the prosecutor having induced his wife to assume the rent contract he had with him; that after working with the prosecutor for one month he was informed that the prosecutor had no right to settle a case of larceny, and that he could work the year out with him for nothing and then be prosecuted, so he thought it best to quit work as a laborer, and went back and worked the land which he had rented from the prosecutor, and in the fall paid him the full rental of 1,000 pounds of lint cotton. The prosecutor made no denial of the statement, and it is substantially corroborated by the evidence.

The trial judge sentenced the accused to work in the chain-gang on the public works of the county for six months, without any alternative.

*Paul Brown, E. P. Shull,* for plaintiff in error.

*Hamilton McWhorter Jr., solicitor,* contra.

HILL, C. J. (After stating the foregoing facts.)

1. Under an accusation which charges in the terms of the statute larceny from the house, a conviction may be had for simple larceny; the latter offense being included in the former. *Brown* v. *State,* 90 *Ga.* 454 (16 S. E. 204).

2. To complete the offense of larceny there must be a taking and carrying away, with intent to steal, the personal property described in the indictment: but the slightest change of location, whereby

complete dominion of the article or property is transferred from the owner to the trespasser, is sufficient evidence of the asportation. *Lundy* v. *State*, 60 *Ga.* 143; 2 Russell on Crimes, 152. The evidence in this case showed that the cottonseed were at least taken up by the accused from the floor where the owner had left them and placed in a sack. The asportation, though slight, was sufficient to show this element of the offense. Indeed, we are inclined to think that a verdict of larceny from the house would not have been unauthorized, as there are some circumstances that tend to show that the accused took the cottonseed from the room of the prosecutor into the room of the seed-house owned by the prosecutor's brother. However, as there was some evidence supporting the theory of simple larceny, we do not think the matter is of sufficient legal consequence to justify the grant of a new trial.

3. The question of intent is one of fact, to be determined by the jury under the evidence, yet the writer doubts if the accused really had any criminal intent in attempting to take the cottonseed from the house. We are sure that if his statement was the truth of the transaction, he did not have such intent. He was working for the prosecutor, and the cottonseed were scattered on the floor, apparently going to waste. It is a habit of negro employees to take possession of the overplus of the substance of their employers and appropriate it to their own use. The habit is one of the results growing out of the relation of master and servant, especially in our section, and, with the liberality characterizing the master in dealing with his servants, such conduct has been rarely treated as criminal. If the employers of negro servants in the South were to prosecute for larceny their servants who take possession of what they regard as waste material not desired by their masters,—"crumbs which fall from their masters' tables,"—domestic servants would be much harder to secure than at present, and the chain-gangs of our country would be very largely increased. The employer in this case, however, seems to have entertained a different view on the subject.

It is usually not the duty of reviewing courts to criticise the conduct of those who assume the role of prosecutor; and where the prosecution is in good faith and for the purpose of vindicating the law, such criticism would be inexcusable; but here the undisputed conduct of the prosecutor is so reprehensible that we can not refrain

from placing upon it, our unmeasured condemnation. He caught this negro man in what, at the worst, was only a petty larceny. He took advantage of this situation to drive a hard bargain, and to condemn him practically to a condition of peonage for 12 months, and actually held him in this bondage for one month. With a threat of prosecution and of the infliction of severe punishment, he forced the accused to make a written contract with him to labor without wages for 12 months. The prosecutor's offense against the rights of this man and the principles of justice furnishes no excuse whatever to the accused; but by contrast with the offense of the latter it is a much greater and more inexcusable infraction of the law. The writer of this opinion is tempted to say that under the facts of this case, illustrating the conduct of both the prosecutor and the accused, the latter seems to be "more sinned against than sinning," and, although he may have been guilty, I am sure a verdict of not guilty would have done no violence to the cause of justice, and would have satisfied the judgment and conscience of the community, without in the slightest degree imperiling the stability of the criminal statute.  *Judgment affirmed.*