A99A0217. THE STATE v. WATSON et al.
(520 SE2d 911)

SMITH, Judge.

In this case, we must decide what constitutes a "taking" of the victim's property so as to support a charge of armed robbery under OCGA § 16-8-41 (a). The trial court found that the State could not

prove armed robbery under the undisputed facts, because it could not show a "taking" of the victim's property. Because we conclude that the facts shown could, if proved, support a finding of a taking within the meaning of the offense of armed robbery, we reverse.

The facts established at the preliminary hearing before a magistrate are essentially undisputed. Three juveniles, Christopher Watson, Rico Simon, and Antonio King, entered a barber shop together. Watson had a haircut and gave the barber a $20 bill. The barber "felt that something wasn't right," partly because he recognized Watson as one of the individuals who had acted in an unusual or furtive fashion outside the shop the day before, and he made change from his pocket instead of the cash register. As the barber reached into his pocket, Antonio King jumped up from his chair, put a gun to the barber's head and ordered him to "drop the money on the floor." The barber dropped both the $20 and his own money on the floor. But at the same time, he pushed King's gun away, drew a .38 caliber revolver from a holster, and shot King four times, with fatal results. One of the bullets that struck King also hit appellant Simon in the left eye. The police took photographs of the scene, including the money that was still lying on the floor.

Watson and Simon were indicted on one count of armed robbery by the use of a firearm and for other offenses not relevant here.[1] The armed robbery count alleged that appellees "did unlawfully, with intent to commit theft, take control of money of value, from the immediate presence of [the victim] by the use of a firearm." Watson and Simon moved to dismiss the indictment for lack of jurisdiction or, alternatively, to transfer their cases to juvenile court, on the ground that the undisputed facts showed an attempted rather than completed armed robbery. The trial court agreed that armed robbery could not be proved by the State and dismissed the armed robbery count of the indictment. This divested the trial court of jurisdiction over the remaining charges. From this ruling, the State appeals.

1. The State incorrectly contends the trial court was not authorized to test the sufficiency of the evidence and could only consider the sufficiency of the language of the indictment. See generally *State v. Eubanks*, 239 Ga. 483, 485 (238 SE2d 38) (1977); *Kirkland v. State*, 206 Ga. App. 27 (1) (424 SE2d 638) (1992). In the special case of juvenile offenders indicted under OCGA § 15-11-5 (b) (2) (A), evidence sufficient to support the allegations of the indictment is necessary to establish the superior court's authority to exercise original subject matter jurisdiction over a matter ordinarily within the jurisdiction of

---

[1] Under OCGA § 15-11-5 (b) (2) (A) (vii), "armed robbery if committed with a firearm" is classified as one of the offenses over which the superior court has exclusive jurisdiction concerning any child 13 to 17 years of age.

the juvenile court. The judgment of a court having no jurisdiction of the person or subject matter is void and a nullity, OCGA § 17-9-4, and "it is always the duty of a court to inquire into its jurisdiction." *Williams v. State*, 217 Ga. 312, 313 (122 SE2d 229) (1961); *First United Church v. Udofia*, 223 Ga. App. 849, 850 (1) (479 SE2d 146) (1996). In this case, the superior court correctly inquired into its jurisdiction to try juveniles Watson and Simon after they raised the issue by motion.

2. Accordingly, we reach the merits of the issue considered by the trial court, and find that the facts here are sufficient to support a finding of a "taking" within the meaning of the offense of armed robbery.

> Under OCGA § 16-8-41 the slightest change of location whereby the complete dominion of the property is transferred from the true owner to the trespasser is sufficient asportation to meet the statutory criterion. It is not required that the property taken be permanently appropriated.

(Citations and punctuation omitted.) *Miller v. State*, 223 Ga. App. 453, 454 (1) (477 SE2d 878) (1996). Nor, we conclude, is it required that the defendant physically *touch* the property.

The incident at issue here does present a very close question of whether an armed robbery was completed. When King placed the pistol to the victim's head and ordered him to "drop the money on the floor," at least two other alternatives were possible. Had the victim obeyed, dropped the money, and allowed King to pick it up from the floor without resistance, the armed robbery clearly would have been completed. On the other hand, it is equally clear that had the victim responded simply by opening fire without obeying any command from King, the offense would constitute merely an attempted armed robbery. But if we focus on when "the complete dominion of the property is transferred from the true owner to the trespasser," id., it is clear that the armed robbery was completed, though only for a short time.

This view is consistent with our earlier decision in *Bramblett v. State*, 191 Ga. App. 238 (381 SE2d 530) (1989). In *Bramblett*, the defendant kidnapped the victim and told her to drive her car to an automatic teller machine and "withdraw $300 for him." Id. Nothing in the opinion suggests that Bramblett ever actually touched the money; indeed the facts as recited indicate otherwise, because the robbery was foiled when Bramblett left the vehicle for a short time and the victim drove away with the money still inside. Id. at 239. We held that, even though the victim escaped with the $300 still in her car, Bramblett had forced her to give him the money withdrawn from

the automatic teller, and this constituted a "taking." Id. at 239 (1). In essence, Bramblett exercised "dominion" or control over not only the victim but her car and its contents.

It is also a common sense conclusion that when a robber threatens his victim with a firearm, issues a direct order to the victim to place property in a particular location, and the victim complies with the order, the victim has relinquished and the robber has exercised control over the property. To hold the opposite would cause truly anomalous results in other close decisions. For example, a bank guard could be accosted on the street by an armed robber and ordered to place his deposit bag into an unoccupied getaway car or a suitcase on the sidewalk. If the guard obeyed the order of the robber and placed the money as commanded, but the police arrived before the robber could pick up the suitcase or enter the car, the robber would not yet have physically touched the money or carried it away. Yet it should be readily apparent that dominion over the property was transferred from the victim to the armed robber.

The dissent's objections that this will change the definition of a "taking" for the purpose of the lesser included offense of theft by taking are without merit. The courts in Georgia have already addressed this supposed anomaly by holding that, if a weapon is undisputedly involved, there is *no* lesser included offense of theft by taking. The actual holding of *Jones v. State*, 233 Ga. App. 362, 364 (504 SE2d 259) (1998), is subtly different from the dissent's paraphrase:

> Where the uncontradicted evidence shows completion of the offense of armed robbery, and no evidence is presented to the effect that a weapon was not used in the robbery, the defendant is not entitled to a jury charge on the lesser included offenses of theft by taking or robbery by intimidation. [Cit.]

The same is true of *Shepherd v. State*, 234 Ga. 75, 77-78 (3) (214 SE2d 535) (1975), where no evidence contradicted the fact that an armed robbery occurred. In *Edwards v. State*, 264 Ga. 131 (442 SE2d 444) (1994), involving charges of burglary and armed robbery, an instruction on the lesser included offense of theft by taking should have been given because there was evidence that the firearms found were not used to commit the offense but instead were merely the spoils of the burglary. No such facts are presented here, no question of a lesser included offense arises, and the dissent's expressed concerns about the potential effect of this case on the law of theft by taking are consequently unfounded.[2]

---

[2] *Cantrell v. State*, 266 Ga. 700, 704-705 (469 SE2d 660) (1996) (cocaine possession and

Moreover, the dissent has confused the mere presence of a weapon with its effect on the actions that constitute armed robbery. The use of a weapon to deprive another of property not only creates the offense of armed robbery, it enables the robber to exercise the "complete dominion" over the property described in *Miller*, supra. Although guns may be the subject of "politically and emotionally charged" debate, King could have used any "offensive weapon" within the meaning of OCGA § 16-8-41 (a) to exercise the complete dominion over the victim and his property required to show a completed armed robbery. The only significance of the firearm here is that the legislature has decreed that its use transfers jurisdiction over the defendants to superior court.

While the dissent also expresses concern that the facts are not yet conclusively established because the case has not yet gone to trial, we are not addressing and cannot address post-trial issues such as the sufficiency of the evidence. It would be both unjust and wasteful of judicial resources to force the defendants and the State to trial before making a determination on the threshold question of jurisdiction. The parties agree that the facts for purposes of this appeal are undisputed. Moreover, counsel for Simon stated at the motion hearing that the facts were undisputed, and counsel for Watson joined his motion. Under these circumstances, the dissent's concerns are without foundation.

At the time the barber obeyed King's order at gunpoint to drop the money, King exercised complete control over not only the barber but all items within the barber's control, including the money dropped at King's direction. The barber did not abandon his property or relinquish control over it to no one in particular; he acted at King's order and gave the money over to King at gunpoint. That King's exercise of control was brief and ultimately unsuccessful is immaterial. The trial court erred in dismissing the indictment.

*Judgment reversed. Johnson, C. J., Pope, P. J., Andrews, P. J., Blackburn, P. J., Ruffin, Barnes, Miller, Ellington and Phipps, JJ., concur. McMurray, P. J., and Eldridge, J., concur in part and dissent in part.*

ELDRIDGE, Judge, concurring in part and dissenting in part.

I dissent from Division 2.

Make no mistake: this case is, as they say in the vernacular, HUGE. The majority's holding equates a "taking" with "control" and

---

possession with intent to distribute), and *Carter v. State*, 269 Ga. 420, 423 (5) (499 SE2d 63) (1998) (misdemeanor involuntary manslaughter and felony murder), simply state the general rule on lesser included offenses and do not involve armed robbery or theft as a lesser included offense.

has instituted a truly radical departure in criminal law. Want an example? The offense of armed robbery may now be proved with evidence that fails to establish the lesser offenses which are included as a matter of *law*. Here's how:

1. (a) Every robbery includes the elements of a theft by taking.[3] Every *armed* robbery includes the elements of a robbery. OCGA §§ 16-8-40; 16-8-41 (a). Thus, the offenses of theft by taking and robbery are lesser included offenses of armed robbery as a matter of law. OCGA § 16-1-6 (2).

(b) Theft by taking, robbery, and armed robbery share the common essential element of a "taking." OCGA §§ 16-8-2; 16-8-40; 16-8-41 (a). Since proof of the greater offense of armed robbery necessarily proves the legally included offenses of theft by taking and robbery ON THE SAME SET OF FACTS, BUT ABSENT THE WEAPON, as a matter of law, *the same act* must demonstrate a "taking" — with or without a gun: "Because a lesser-included offense by its very nature embodies at least one essential element of a greater offense, it is axiomatic that the defendant must necessarily be guilty of the lesser offense in order to be found guilty of the greater." *Cantrell v. State*, 266 Ga. 700, 704-705 (469 SE2d 660) (1996) (Hunstein, J., dissenting); *Carter v. State*, 269 Ga. 420, 423 (5) (499 SE2d 63) (1998).

(c) Whenever the evidence is factually in dispute as to whether a weapon was involved in the taking, a trial judge is required to give a requested jury instruction on the legally included lesser offenses of theft by taking and robbery.[4]

(d) On the same set of facts in this case — with no weapon — the evidence of a "taking" to prove a theft by taking is (1) King's order to "drop the money on the floor," and (2) the barber's dropping of the money on the floor. This evidence does not establish a "taking" to prove theft by taking. If I tell you to drop your pen on the floor and you drop it, I have not taken your pen. I have not committed theft by taking, even if I want your pen.

(e) Thus — on the facts of this case — if King had been *unarmed*, he would not have, in the majority's words, "exercised complete control over not only the barber but all items within the barber's control, including the money dropped at his direction"; if King had been *unarmed*, the barber's dropping of the money at King's command would not demonstrate, as the majority states, that "complete domin-

---

[3] *Hensley v. State*, 228 Ga. 501 (186 SE2d 729) (1972); *King v. State*, 214 Ga. App. 311, 313 (447 SE2d 645) (1994).

[4] *Jones v. State*, 233 Ga. App. 362, 363-364 (504 SE2d 259) (1998); *Shepherd v. State*, 234 Ga. 75, 77-78 (214 SE2d 535) (1975). See also *Edwards v. State*, 264 Ga. 131 (442 SE2d 444) (1994).

ion of the property [was] transferred from the true owner to the trespasser."

(f) Under the majority's analysis, it is King's control over the barber because of the *weapon* that creates the "taking." No weapon: no "taking." *Appellant Watson could admit all of the State's facts as outlined on page 483 of the majority opinion, except* the presence of a weapon, and he would be guilty of nothing. A jury charge on theft by taking could not be given as a matter of law, because with *no* weapon, there was no "taking" of the money. Thus, under the majority's analysis, the greater offense of armed robbery may be proved by evidence that fails to establish the elements of theft by taking. *A defendant may be guilty of the greater offense without ever having committed the lesser included offense.* Now. This is an "anomalous result."

(g) But the majority asserts that the above argument is "without merit." The majority declares it as such because: "The courts in Georgia have already addressed this supposed anomaly by holding that, if a weapon is undisputedly involved, there is *no* lesser included offense of theft by taking." (Emphasis in majority.)

With due respect, this statement captures how ill-considered the majority's position really is.

Yes. When evidence of a weapon is undisputed, "there is *no* lesser included offense of theft by taking" — as a matter of *FACT*, *for jury instruction purposes*.[5] But theft by taking remains included in armed robbery as a matter of LAW, even if the facts of a particular case do not warrant a jury instruction thereon. No court in Georgia — until now — has held that the legally included offense of theft by taking "disappears" when evidence of a weapon is undisputed, as the majority implies. The essential elements of a legally included lesser offense must *always* be present upon proof, undisputed or not, of the greater offense. That is the point. "A finding of [the] commission of the greater offense necessarily encompasse[s] a finding of [the] commission of the lesser included offense[s]." *Carter v. State*, supra at 423 (5). Thus, regardless of whether evidence of a weapon is factually disputed or not, as a matter of *law* the same act must show a "taking" — with or without a weapon. In this case, it does not.

Further, although irrelevant with regard to the instant issues of law, the majority also asserts that, factually, "no question of a lesser included offense arises" in *this* case. In my view, this statement, too, demonstrates the majority's lack of consideration. *This case has not gone to trial.* The defense has not put up any evidence yet. The majority cannot know what the evidence ultimately will be based only

---

[5] *Jones v. State*, supra at 363-364; *Shepherd v. State*, supra at 77-78.

upon the State's bind-over evidence, even if such evidence is *currently* undisputed for the *sole purpose* of determining the superior court's jurisdiction.

2. In point of fact, the majority has changed the essential element of a "taking" especially for the offense of *armed* robbery because of the presence of a gun — a politically and emotionally charged issue. The majority now finds that a "taking" is the equivalent of the exercise of control over the victim by virtue of the presence of a weapon; the majority states, as a matter of "common sense": "when a robber threatens his victim with a firearm . . . and the victim complies with the order [to drop the money], the victim has relinquished and the robber has exercised control over the property."

But, "control" is not the same as a "taking" for purposes of theft by taking, or robbery, or, necessarily, armed robbery. The majority creates a new form of "taking" for the commission of an *armed* robbery. However, in my view, only the Legislature can do what the majority has done. The proper resolution is the enactment of an armed robbery statute that makes it a crime "to take *or attempt to take* [property] from the person or presence of another" with an offensive weapon.[6]

3. The fact is that under Georgia's robbery laws, which come to us from the common law larceny, a "taking" requires the attainment of *physical* possession of the property by the robber, or one acting on his behalf. The majority will not, or simply cannot, address the fact that every single case in Georgia wherein the evidence was sufficient to support a charge of robbery or armed robbery — *EVERY SINGLE CASE IN GEORGIA* — includes the defendant, or one acting on his behalf, gaining *physical* possession of the victim's property. The elemental language cited by the majority from *Miller v. State*, 233 Ga. App. 453, 454 (477 SE2d 878) (1996), i.e., "the slightest change of location whereby complete dominion of the property is transferred," went only to the aspect of asportation, slight movement, *AFTER* Miller had already gained physical possession of the cash drawer. The only other case cited by the majority in support of such radical change in the law, *Bramblett v. State*, 191 Ga. App. 238 (381 SE2d 530) (1989), had nothing to do with whether a physical "taking" had occurred. It had. The issue in *Bramblett* was whether a "taking" had to be permanent, since the victim got her money back. A cursory reading of the facts in *Bramblett*, footnoted below, demonstrates that the case is ill-suited for the use the majority makes of it.[7] Even the

---

[6] See, e.g., 18 USCA § 2113; Miss. Code Ann. § 97-3-79; *Lindsey v. State*, 720 S2d 182 (Miss. 1998).

[7] Bramblett:

approached the victim . . . displayed a pistol, forced his way into her car . . .

State was aware that, in this case, the facts did not prove a "taking." That is why the Fulton County District Attorney indicted the defendants for "taking control" of the barber's money, not for "taking" it as required by statute. OCGA § 16-8-41 (a).

4. To highlight the radical nature of the majority's holding, consider these questions raised thereby:

Did King exercise "dominion and control" over the barber and his money, if the barber dropped the money *for the purpose* of freeing his shooting hand? Does a "taking" then depend on the subjective intent of the victim in complying with a robber's orders? Did King exercise "*complete* dominion and control" over the barber and his money, when King ended up dead on the floor? Who had control of whom? And when? What if a victim drops money at an armed robber's command and then retrieves it, refusing to part with it? Or takes off running with it? Is the property "taken" by the *robber*? When? Can a robber take "*from* the person or immediate presence" of a victim as required by statute, if the victim is the one who satisfies the element of asportation of the property?

How much control is enough control to equal a "taking?" If, as the majority states, King could have used "any 'offensive weapon' within the meaning of OCGA § 16-8-41 (a) to exercise the complete dominion over the victim and his property," when is such "complete dominion" assumed if a victim is threatened with a stick, or a broken bottle, or a knife, or a brick? With "offensive weapons" that generally require bodily contact, how close must a robber get in order to assume "complete dominion and control" over a victim and thus his property? Is a "taking" dependent upon a victim's subjective fear of the type of weapon being used? Or the one who is using it? These are just some of the questions raised by the majority's new approach. I feel confident that many, many more will arise.

For what appear to me to be obvious reasons, I dissent from the majority of this Court. To me, the majority's creation of a new category of "taking" especially for armed robbery creates an Alice in Wonderland world of trouble: a taking, is a taking, is a taking . . . except when it is not. In my view, because of the egregious nature of the

---

[e]mptied her purse. . . had the victim drive to an automatic bank teller machine and withdraw $300 *for him* . . . instructed her to drive to Murray County . . . had her stop at a convenience store and call her husband [to get $10,000] . . . had the victim drive to another road and stop the car so he could exit and relieve himself. As he got out of the car, Bramblett slipped and dropped the gun, and the victim drove away. We reject Bramblett's contention that because the victim escaped with the $300 still in her car, the State had failed to prove the requisite element of a "taking" for the offense of armed robbery. The victim *was forced to give Bramblett the $300 withdrawn from the automatic teller machine*; this was a sufficient showing of a "taking."

(Emphasis supplied.) Id. at 238-239.

facts and the climate in which it comes to us, this "bad case" is in danger of creating truly "bad law" and exemplifies perfectly why this Court should not usurp the function of the Legislature by judicially enlarging an existing criminal statute, despite our desire to address the societal ills created by the use of handguns in the commission of criminal acts. The facts of this case demonstrate an attempted armed robbery that was foiled by the barber's use of a handgun. The trial court correctly found that the evidence failed to show a "taking." The judgment of the court below should be affirmed.

I am authorized to state that Presiding Judge McMurray joins in this opinion.

DECIDED JULY 16, 1999 —
RECONSIDERATION DENIED JULY 30, 1999 

*Paul L. Howard, Jr., District Attorney, Joseph F. Burford, David E. Langford, Assistant District Attorneys*, for appellant.
*Janet S. Willy*, for Watson.
*J. Robert Joiner*, for Simon.