## A02A0116. SHARP v. THE STATE.
### (565 SE2d 841)

SMITH, Presiding Judge.

Jeffrey Ray Sharp was found guilty by a jury and sentenced on three counts of armed robbery, kidnapping, two counts of aggravated assault, two counts of aggravated assault on a police officer, hijacking a motor vehicle, and possession of a firearm during the commission of a crime. His motion for new trial, as amended, was denied, and he appeals. Sharp does not seek reversal of all his convictions, but only those for kidnapping, one count of armed robbery, one count of aggravated assault, and the firearm charge. We find no error, and we affirm those convictions.

---

Construed to support the jury's verdict, the evidence presented at trial showed that at about 9:00 a.m., the proprietor of a jewelry store in Forest Park was opening his business with the help of his mother and his wife. His infant twins were also with him. Sharp entered the store almost immediately, wearing a black mask and accosting the proprietor with a handgun. He dragged the proprietor from the back room to the showroom and tied his hands behind his back. The store was equipped with an alarm system that alerted when the door was opened. Within a few moments, the alarm company telephoned, as was its custom, so that the proprietor could answer and give his secret code. The security company called twice, but because Sharp would not allow the owner or his family members to answer the telephone, the alarm company notified the police.

Sharp showed a gun and asked, "Where's the money?" When told that it was in the owner's pocket, in his family's purses, and in the cash register, Sharp took about $400 from the owner's pocket and also removed cash from the register and the women's purses, all while pointing the gun at each of them. He then instructed the owner's wife to open the safe. He grabbed one of the babies, held the gun to his head, and threatened to shoot him if the owner's wife did not do as instructed. Because the owner's wife was so nervous, and because she rarely opened the safe, she had difficulty opening it. The owner begged Sharp to let him do it, and Sharp acceded, dragged the owner to the safe, and cut the ties binding his wrists so that he could open it. At that point, while Sharp's back was turned, the owner noticed the police outside. Sharp removed some items from the safe and fled through the parking lot, dropping items on the way. He jumped off an embankment, injuring his leg. He then ran toward a passing car, pointing his gun at the police officers.

Sharp collided with the hood of the car while attempting to shoot at the officers. The officers attempted to shoot him in return but missed. The car stopped, and Sharp opened the driver's side door, entered the car, and attempted to pull the driver out as he was getting in. The driver, however, was wearing a seat belt and kept a firm grip on the steering wheel. Sharp laid his upper body across the driver's lap and pressed his handgun against the passenger's thigh. He pulled the trigger, but nothing happened. He then told the driver to "go," but she did not. She pressed herself back in her seat and held her hands up. The police reached the car and tried to pull Sharp out. One police officer pressed his gun against Sharp's neck, telling him repeatedly to drop the gun. When Sharp refused, the driver grabbed his arm and twisted it so that the barrel of the gun pointed to the floorboard. A police officer then wrested the gun from Sharp's hand. He was still fighting when the police had him on the ground. In the pack he was carrying, the police found the mask and money. Duct

tape was found on his person. The gun, a Colt .45 semi-automatic handgun, was loaded with a live round in the chamber and additional rounds in the clip.

1. Sharp contends the evidence was insufficient to support his conviction for kidnapping the proprietor, because the State failed to prove the element of asportation. "A person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will." OCGA § 16-5-40 (a). Sharp argues that moving the victim from one part of the store to another was "minimal" and, relying upon the special concurrence in *Peterson v. State*, 212 Ga. App. 31, 33-34 (441 SE2d 267) (1994) (Blackburn, J., concurring specially), he argues that Georgia law requires more than slight asportation. We do not agree.

As the special concurrence in *Peterson* acknowledges, "the distance which [a] kidnapper abducts the victim is without legal significance under Georgia law. [Cit.]" Id. at 33 (Blackburn, J., concurring specially). "Shoving" a victim without moving the victim from one location to another, or merely pushing a victim to the ground, is not sufficient to satisfy the element of asportation. *Woodson v. State*, 273 Ga. 557, 558, n. 1 (544 SE2d 431) (2001). But moving the victim from a seated position on a concrete block to the dirt behind the concrete block was held to be sufficient to show asportation in *Love v. State*, 190 Ga. App. 264-265 (1) (378 SE2d 893) (1989). See *Woodson*, supra at 558. Here, Sharp dragged the proprietor from the back door of the back room to the front door of the showroom. This was sufficient to show the element of asportation.

Sharp also argues that even if the State showed asportation, the kidnapping merged into the armed robbery as a matter of fact. But the only authority cited by Sharp, *Chambley v. State*, 163 Ga. App. 502, 504 (2) (295 SE2d 166) (1982), does not support his contention. In *Chambley*, this court held that the kidnapping did not merge with the robbery. Id. The same is true here. Kidnapping is not a continuing crime; it was completed when the victim was moved from one room in the store to another. *Robinson v. State*, 210 Ga. App. 175, 176 (2) (435 SE2d 466) (1993). The armed robbery occurred subsequently.

2. Sharp maintains that the evidence does not support his conviction for the armed robbery of the driver of the car. Armed robbery is committed when, with intent to commit theft, one takes property from another's person or immediate presence by use of an offensive weapon. OCGA § 16-8-41. Sharp argues that he never succeeded in taking the car from the driver, and "[u]ntil a would-be robber takes property from his victim, no armed robbery has occurred." But viewed to support the verdict, the evidence presented showed that when Sharp climbed into the driver's seat of the car and placed him-

self across the driver's lap and told her to "go," the driver removed her hands from the wheel, held them up in the air, and pushed back in her seat. "Under OCGA § 16-8-41 the slightest change of location whereby the complete dominion of the property is transferred from the true owner to the trespasser is sufficient asportation to meet the statutory criterion. It is not required that the property taken be permanently appropriated." (Citations omitted.) *State v. Watson*, 239 Ga. App. 482, 484 (2) (520 SE2d 911) (1999). Here, as in *Watson*, it is, perhaps, a close question. But focusing again on whether complete dominion of the property shifted from the driver to Sharp, the jury was authorized to conclude that when the driver released her grip on the steering wheel, raised her hands, and leaned back, the armed robbery was completed.

3. Sharp asserts that even if his conviction for this armed robbery is affirmed, his conviction for aggravated assault of the passenger must be reversed because he cannot be convicted and sentenced for both. This assertion is without merit. "Robbery is a crime against possession, and is not affected by concepts of ownership. Similarly, one may only rob a person, and not a corporate entity, or an object such as a cash drawer." (Citation and punctuation omitted.) *State v. Smith*, 193 Ga. App. 831, 832 (1) (389 SE2d 547) (1989). Sharp's action "against each individual was a separate crime and could not merge in fact or law." (Citation omitted.) Id. He committed armed robbery against the driver and a different crime against the passenger. He held the gun against the passenger's thigh and actually pulled the trigger, although the gun did not fire. The trial court did not err in refusing to merge these convictions.

4. Sharp contends he should not have been convicted of possessing a firearm during the commission of the crime because his gun was inoperable. He argues that the question of whether a loaded but inoperable handgun is a "firearm" within the meaning of OCGA § 16-11-106 has not been decided by the appellate courts in Georgia, but authority exists from other jurisdictions holding that such a handgun is not a "firearm."

Sharp's argument fails for several reasons. First, although several witnesses speculated about why the gun failed to fire, no evidence was presented that the gun itself was "inoperable." The testimony was simply that the gun "didn't work at that particular time." It is possible that the gun's failure to discharge may have been attributable to some error on the part of Sharp. Second, even if the gun was actually inoperable, no evidence was presented showing when it became inoperable. A police officer testified that although he was not certain, he believed a part of the gun had fallen off. This could have happened at any time, including when Sharp jumped off the embankment or when he hit the car. No evidence showed that it was inoper-

able when he terrorized the proprietor and his family in the store. A rational trier of fact would be authorized to find that the weapon was operable during the armed robbery of the jewelry store. Third, the language of the statute does not require the weapon to be operable. Indeed, he would have been just as guilty of this charge had he never even attempted to fire the gun.

5. As best we understand Sharp's final enumeration of error, he complains that the trial court abused its discretion in sentencing him to the maximum allowed on all charges even though his handgun was inoperable. But all the sentences are within the statutory limits for each of the crimes for which Sharp was convicted. "We will not review for legal error any sentence which is within the statutory limits. Any question as to the excessiveness of such a sentence should be addressed to the sentence review panel as provided in OCGA § 17-10-6." (Citations and punctuation omitted.) *Brown v. State*, 242 Ga. App. 347, 350 (529 SE2d 650) (2000).

*Judgment affirmed. Eldridge and Ellington, JJ., concur.*

DECIDED MAY 22, 2002.

*Alan J. Koman*, for appellant.

*Robert E. Keller, District Attorney, Todd E. Naugle, Assistant District Attorney*, for appellee.