S11G0344. GUTIERREZ v. THE STATE.

(723 SE2d 658)

CARLEY, Presiding Justice.

Francisco Gutierrez was indicted in superior court for armed robbery and other offenses even though he was 16 years old at the time of the alleged crimes. See OCGA § 15-11-28 (b) (2) (A) (vii) (giving superior court exclusive jurisdiction over the trial of any child 13 to 17 years old accused of armed robbery committed with a firearm). Gutierrez moved to transfer the case to juvenile court. See OCGA § 15-11-28 (b) (2) (B).

At a hearing on that motion, the State presented evidence that Guiterrez and four other males, armed with a handgun and other weapons, entered the back door of a restaurant and began demanding money and using an aluminum baseball bat to strike Susan Jiang, who was the owner of the restaurant. Ms. Jiang informed them that the money was in the cash register. The intruder with the gun unsuccessfully attempted to open the cash register and then told Ms. Jiang's 11-year-old son Jeffery to open it. Ms. Jiang also told Jeffery to open the cash register and give the armed intruder the money so that the men would leave. Jeffery went to the cash register, opened the drawer, and lifted the flap that held the money in place. While the armed assailant was hunched over the cash register, an undercover police officer shot at him through the front window. The perpetrators ran out the back door, where they were arrested by officers who had been following them because they were suspected of other armed robberies.

Although the superior court found that no money was actually physically removed from the cash register, the trial court denied the motion to transfer, concluding that a taking and thus an armed robbery had occurred. On interlocutory appeal, the Court of Appeals affirmed, determining that "the armed robbery was completed at the time the son opened the cash register and raised the flap resting on top of the cash, thereby ceding control of the money to the perpetrators." *Gutierrez v. State*, 306 Ga. App. 371, 374 (1) (702 SE2d 642) (2010). We granted certiorari to consider this ruling.

Like the trial court, we initially note that it was authorized to

test the sufficiency of the evidence as follows:

> In the special case of juvenile offenders indicted under OCGA § 15-11-[28] (b) (2) (A), evidence sufficient to support the allegations of the indictment is necessary to establish the superior court's authority to exercise original subject matter jurisdiction over a matter ordinarily within the jurisdiction of the juvenile court. The judgment of a court having no jurisdiction of the person or subject matter is void and a nullity, OCGA § 17-9-4, and "it is always the duty of a court to inquire into its jurisdiction." [Cits.] In this case, the superior court correctly inquired into its jurisdiction to try juvenile[ ] [Gutierrez] after [he] raised the issue by motion.

*State v. Watson*, 239 Ga. App. 482, 483-484 (1) (520 SE2d 911) (1999).

Since the current criminal code was enacted in 1968, both the robbery and armed robbery statutes in Georgia have required, among other elements, that the accused, "take[ ] property of another from the person or the immediate presence of another . . . ." OCGA §§ 16-8-40 (a), 16-8-41 (a); Ga. L. 1968, pp. 1249, 1298, § 1. Since *James v. State*, 232 Ga. 834, 835 (209 SE2d 176) (1974), this Court has held that, for the offense of armed robbery to be complete under OCGA § 16-8-41 (a), the "'"'slightest change of location whereby the complete dominion of the property is transferred from the true owner to the trespasser is sufficient asportation'"' . . . . And it is not necessary that the property taken be permanently appropriated. [Cits.]" *Bradley v. State*, 272 Ga. 740, 742 (2) (533 SE2d 727) (2000). See also *Tarver v. State*, 278 Ga. 358, 360 (1) (602 SE2d 627) (2004); *State v. Johnson*, 558 NW2d 375, 377 (Wis. 1997); 77 CJS, *Robbery* § 4; 67 AmJur2d, *Robbery* § 13. Thus, Georgia has consistently required the conjunction of both the "slightest change of location" and the transfer of "complete dominion" over the property.

It is therefore inappropriate to "focus[ ]" only "on whether complete dominion of the property shifted," as the Court of Appeals did in *Sharp v. State*, 255 Ga. App. 485, 488 (2) (565 SE2d 841) (2002). As a result, the Court of Appeals erroneously held in *Sharp* that the evidence supported a conviction for armed robbery even though there was absolutely no movement of the property, which was the victim's car, or of the keys to the car. Accordingly, we hereby overrule *Sharp v. State*, supra. See *State v. Johnson*, supra at 378 (rejecting an automobile exception to the asportation requirement, which "creates an easily identifiable distinction between attempted armed robbery and armed robbery"). Although *Sharp* relied on the "focus" on "complete dominion" in *State v. Watson*, supra at 484 (2),

the Court of Appeals went on in *Watson* to hold correctly as follows:

> It is also a common sense conclusion that when a robber threatens his victim with a firearm, issues a direct order to the victim to place property in a particular location, and the victim complies with the order, the victim has relinquished and the robber has exercised control over the property.

*State v. Watson*, supra at 485 (2) (where robber ordered victim at gunpoint to drop the money and the victim complied).

In this case, the armed intruder threatened the victims and demanded money and the opening of the cash register. The victims complied by opening the drawer which contained the money and thereby moving it from its secured location in the cash register to an unsecured location which was easily accessible to the intruder, who immediately took up a physical position close above it. The single act of pulling a cash drawer out from the register constitutes the requisite slightest change of location. *Miller v. State*, 223 Ga. App. 453-454 (1) (477 SE2d 878) (1996). "[I]t is not necessary that the property be taken into the hands of the robber . . . ." *Johnson v. State*, 432 S2d 758, 759 (Fla. App. 1983). As worded in *State v. Watson*, supra at 484 (2), it is not "required that the defendant physically *touch* the property." (Emphasis in original.) Furthermore, "[t]he slightest movement is sufficient to meet the element of asportation," so long as it is "a movement away from the area where the object was intended to be. [Cit.]" *State v. Johnson*, supra at 377-378. In this case, the money was removed " 'from its original position or place where the [victims] wanted it to be' " and instead was placed and uncovered in front of the armed intruder in the place where he wanted it to be, and in this way, the money "came within the dominion and control of [Gutierrez] and his accomplice[s], and the asportation, or taking, was complete . . . ." *Johnson v. State*, supra.

Accordingly, the Court of Appeals correctly affirmed the superior court's denial of the motion to transfer.

*Judgment affirmed. All the Justices concur, except Hunstein, C. J., Benham and Melton, JJ., who dissent.*

BENHAM, Justice, dissenting.

Concluding that the movement of a cash-register drawer within a cash register constituted the asportation necessary to satisfy the "taking" element of armed robbery, the majority upholds the denial of the motion to transfer the criminal prosecution of Francisco Gutierrez to juvenile court. I respectfully disagree because I believe the facts of this case do not meet the standard for asportation

formulated in *State v. Watson*, 239 Ga. App. 482 (1) (520 SE2d 911) (1999).

"A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon." OCGA § 16-8-41 (a). I agree with the majority that the taking of property of another is an essential element of the crime of armed robbery (*Woodall v. State*, 235 Ga. 525, 533 (221 SE2d 794) (1975)), and asportation of property without the consent of the owner constitutes a taking. See *Crawford v. State*, 90 Ga. 701 (1) (17 SE 628) (1892). See also *Lundy v. State*, 60 Ga. 143-144 (1878) (defendant's movement of dead cow owned by another and over which defendant had complete dominion, in order to skin the cow, was sufficient change of location to constitute the necessary asportation); *Johnson v. State*, 9 Ga. App. 409 (2) (71 SE 507) (1911) (defendant's taking up of cottonseed from the floor where the owner had left them and placing them in a sack was sufficient asportation to constitute the taking necessary for larceny). I also agree that asportation requires "the slightest change of location" of the owner's property by or through which "the complete dominion of the property is transferred from the true owner to the trespasser[,]" and that the perpetrator's appropriation of the property need not be permanent. *James v. State*, 232 Ga. 834, 835 (209 SE2d 176) (1974) (the armed defendant's act of "temporarily" picking up the sack of money prepared by the store clerk was sufficient asportation to constitute armed robbery); *Igle v. State*, 223 Ga. App. 498 (478 SE2d 622) (1996) (sufficient asportation took place when armed burglar grabbed the tin box containing money belonging to the victim, and burglar's immediate dropping of the box did not detract from that).[1]

Where I part ways with the majority is in the unnecessary adoption of a test for determining whether the asportation required for a taking has occurred. The majority, citing *Miller v. State*, 223 Ga. App. 453 (1) (477 SE2d 878) (1996), holds that "[t]he single act of pulling a cash drawer out from the register constitutes the requisite slightest change of location" (Maj. op., p. 645), and concludes, citing case law from Wisconsin and Florida, that the necessary movement for purposes of asportation is "a movement away from the area where the object was intended to be [cit.] . . . from its original position or place where the (victims) wanted it to be. . . ." (Punctua-

---

[1] I concur fully in the majority's overruling of *Sharp v. State*, 255 Ga. App. 485 (2) (565 SE2d 841) (2002), because the movement of the car owner in releasing her hold on the steering wheel of the car sought by the perpetrator did not constitute the slightest change of location of the property – the car – that transferred complete dominion of the property from the owner to the perpetrator.

tion omitted.) Maj. op. at 645. However, none of the cases relied upon by the majority in the creation of its asportation test is factually similar to the case at bar. In the present case, the perpetrator never had actual physical contact with the property he sought to take from its owner. That is in sharp contrast with *Miller v. State*, supra, 223 Ga. App. 453 (1), where asportation was found because it was the *perpetrator* who physically removed the cash drawer from the open cash register, thereby gaining complete dominion of the money from its true owner. In the Wisconsin case (*State v. Johnson*, 207 Wis. 2d 239 (558 NW2d 375) (1997)), the Supreme Court of Wisconsin ruled there was no asportation when the car the perpetrator wanted to steal did not move, despite the perpetrator's efforts to start the car,[2] and the Florida case (*Johnson v. State*, 432 So.2d 758 (Fla. App. 1983)), involves an armed perpetrator who touched a bag of money prepared by a store clerk at the direction of the perpetrator, but did not move the bag from the place where the clerk had put it at his direction.[3]

Instead of looking to factually-dissimilar cases from Wisconsin and Florida to resolve the issue, we should apply the test formulated by the Court of Appeals in *Watson* — the only other Georgia case I have found where the perpetrator did not obtain actual physical control of the property he sought to take from its owner. In *Watson*, supra, 239 Ga. App. 482, an armed man sought to obtain money from

---

[2] We have endorsed the same principle today – movement of the object being taken is required for asportation – by overruling *Sharp v. State*. In its summary of the law of asportation in Wisconsin, the Wisconsin court observed that the movement sufficient to meet the element of asportation "must be a movement away from the area where the object was intended to be[,]" citing a case from the Wisconsin Court of Appeals in which the perpetrator obtained temporary actual possession of the object when he "wrested possession and control of the purse from the victim by force and carried it to the entrance of the alley" where he abandoned it. *Ryan v. State*, 95 Wis.2d 83, 100 (289 NW2d 349) (Wis. App. 1980), overruled on other grounds by *State v. Anderson*, 141 Wis.2d 653 (416 NW2d 276) (1987). Wisconsin also applied its *Ryan* test in *State v. Williams*, 106 Wis.2d 771 (318 NW2d 26) (Wis. App. 1982) (unpublished), where asportation was found because "the defendant had taken property from various places within the victim's home and had placed that property in a suitcase[,]" though the defendant was caught before he left the home with the suitcase. Georgia courts easily would find asportation in such scenarios because the property's location had changed, with the perpetrator gaining complete dominion over it from the owner, albeit only temporarily. See *Sanders v. State*, 242 Ga. App. 487 (3) (530 SE2d 203) (2000) (asportation necessary for a taking took place when perpetrator dropped cartons of cigarettes before running out of the convenience store which owned the cigarettes). See also *Miller v. State*, supra, 223 Ga. App. 453 (1) (sufficient asportation when perpetrator removed cash drawer from cash register, despite then having dropped it and leaving the store empty-handed). Wisconsin has not applied its test to a scenario like the one before us – where the perpetrator does not touch the property over which he seeks to obtain complete dominion.

[3] The Florida case falls between this Court's holding in *James v. State*, supra, 232 Ga. at 835, that sufficient asportation occurred when the perpetrator temporarily picked up the sack of money prepared by the store clerk at the perpetrator's direction, and *Watson v. State*, supra, 239 Ga. App. 482 (1), where the perpetrator never took actual physical control of the property that he had ordered the victim to put in a particular location.

the person of the barber who had just cut his hair. After the customer/perpetrator made payment for his haircut, the barber retrieved money from his pocket with which to make change, at which point the armed customer/perpetrator ordered the barber to drop the money on the floor. The barber complied with the order and then shot the perpetrator before the perpetrator could take actual physical control of the money on the floor. The Georgia Court of Appeals held that a taking had occurred because the perpetrator had obtained complete dominion over the money due to the victim's compliance with the perpetrator's "direct order to the victim to place [the] property in a particular location. . . ." Id. at 485.

The case at bar fails the *Watson* test because the victim was not given an order "to place property in a particular location" and had not lost the ability to exercise control over the property. Rather, the victim was told merely to open the cash register, and he did so. Even applying to the facts of this case the Wisconsin-Florida test proposed by the majority — that the property's movement must be "away from the area where the object was intended to be" — the victim's opening of a cash register to expose the cash drawer to view is not movement of the cash from the area where it was intended to be. The cash remained in the cash register drawer, where it was intended by the owner for it to be. Compare *Miller v. State*, supra, 223 Ga. App. 453 (1) (where perpetrator pulled the drawer out of the cash register that the store clerk had opened). It is analogous to a situation in which a victim carrying a purse or wallet is confronted by an armed perpetrator and complies with his order to come closer to the perpetrator. Has the purse or wallet been "taken" at that point since the victim did not intend for his/her property to be that close to the perpetrator? Or must the victim comply with the perpetrator's order to leave the purse/wallet in a particular location? Because I believe the victim must comply with an order from the perpetrator requiring the victim to put the property in a particular location for asportation to have occurred, and no such order or action took place in the case at bar, I conclude the facts before us do not support armed robbery and the case should be transferred to juvenile court. Accordingly, I respectfully dissent.

I am authorized to state that Chief Justice Hunstein and Justice Melton join this dissent.

MELTON, Justice, dissenting.

I join fully in the dissent, but write separately to emphasize a few points. The decisive factor in this case is that at no point did the money in the cash register ever leave the place where it otherwise always existed. Every day, and at all times, the Jiangs kept the money in the drawer of the cash register, and at no time during the incident involving Gutierrez and his compatriots did the money ever

leave the drawer of the cash register. As such, there was no asportation of the money that would support the "taking" element of armed robbery. See *James v. State*, 232 Ga. 834, 835 (209 SE2d 176) (1974) (In order to show asportation that is sufficient to support taking element of armed robbery, there must be "[t]he slightest change of location [of the property in question] whereby the *complete dominion* of the property is transferred from the true owner to the trespasser") (emphasis supplied).

Perhaps the difficulty in this case arises from the increasingly blurred distinction in the law between the concept of a victim "abandoning control" of property and the concept of "asportation." Compare *State v. Watson*, 239 Ga. App. 482 (520 SE2d 911) (1999) (evidence supported asportation element of armed robbery where victim was ordered to drop money and did so, but at the same time pushed away would-be robber and shot him) with *State v. Johnson*, 207 Wis.2d 239 (558 NW2d 375) (1997) (no asportation occurred where armed perpetrator ordered victim out of car and victim complied (thereby ceding control of the car), but perpetrator could not move the car because the car would not start after he entered it). When properly separated, there is a distinction between abandoning control and asportation. For example, when an armed robbery victim extends her arm to hand over a purse; or gets out of the car; or, as in this case, opens a cash register drawer; there has been an abandonment of control over the property that could end up the subject of the armed robbery. However, none of these events, by themselves, represent the completed offenses of armed robbery without the additional presence of asportation. Specifically, the robber would need to take the purse or otherwise ensure that *complete* control of it has been ceded to the robber through its movement (see *State v. Watson*, supra); get in and exercise dominion over the car, causing it to move (see *State v. Johnson*, supra); or take the money out of the drawer. See *Miller v. State*, 223 Ga. App. 453 (477 SE2d 878) (1996). See also *James*, supra, 232 Ga. at 835.

In order to avoid confusion in the law, I believe that we need to continue to be careful about separating the concepts of "abandonment" and "asportation." Because the would-be robbers here never caused the money to leave the place where it had always otherwise existed, even if the store clerk had abandoned the property, I would hold that no asportation had yet occurred.

I am authorized to state that Chief Justice Hunstein and Justice Benham join in this dissent.

DECIDED FEBRUARY 6, 2012 —
RECONSIDERATION DENIED MARCH 5, 2012.

*James W. Smith*, for appellant.
*J. Bradley Smith, District Attorney, Deborah S. Wilbanks, Assistant District Attorney*, for appellee.