A99A0271. MATHIS v. THE STATE.
(517 SE2d 578)

JOHNSON, Chief Judge.

Andre Mathis and Ronnie Kelly were convicted of armed robbery and possession of a firearm during the commission of a felony. Mathis appeals.

1. Mathis challenges the sufficiency of the evidence supporting the convictions. The challenge is without merit.

Viewed in the light most favorable to support the verdict, the evidence shows that two men wearing black gloves, dark clothes, and ski masks entered Stuckey's Mini-Mart to commit a robbery. Store owners Mitchell Stuckey and Inez Stuckey, along with cashier Debra Drains, were in the store when the robbers entered. Inez Stuckey stood behind the cash register, Drains stood near the cashier counter and Mitchell Stuckey stood near the back of the store, which is very small.

One of the robbers was armed with a handgun. He pointed the gun at Inez Stuckey and ordered her to open the register. The other man took money from the open register drawer. The robbers then demanded the money that was kept in the store office. Inez Stuckey retrieved that money, which had been banded with bank wrappers, and gave it to the robbers, who then ran from the store.

When the police arrived at the store, Drains immediately identified the two robbers as Ronnie Kelly and Andre Mathis. Drains has known both Kelly and Mathis for many years and had seen them in the store earlier that day. She was able to identify Kelly as one of the robbers by his voice and his distinctive walk. Drains recognized Mathis by the way he spoke during the robbery.

The arresting officer testified that approximately one hour after the robbery, he went to the home of Mathis' girlfriend, where he found Mathis and Kelly. The officer saw a large amount of money bulging out of Kelly's pants pocket. Mathis and Kelly were placed

under arrest. The officer then obtained Mathis' girlfriend's consent to search the house. During the search, the officer found three ski masks, gloves, and money wrappers. A handgun was also found in Kelly's jacket.

Both Drains and Inez Stuckey testified that the handgun's barrel appeared similar to the barrel of the gun used during the robbery. The masks and gloves also looked like those worn by the robbers, and the money wrappers were similar to those used in the Mini-Mart.

Based on our review of the entire record before us, we find ample evidence from which a rational trier of fact could have concluded beyond a reasonable doubt that Mathis was guilty of the offenses of armed robbery and possession of a firearm during the commission of a felony. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Reid v. State*, 232 Ga. App. 313, 315 (2) (501 SE2d 842) (1998).

2. Mathis claims there is a fatal variance between the allegations in the indictment and the evidence in that the indictment alleges the money was taken from the immediate presence of Drains whereas the evidence shows the money was taken only from the immediate presence of Inez Stuckey. Contrary to Mathis' claim, the evidence does not show a taking only from the immediate presence of Inez Stuckey.

The meaning of "immediate presence" in this context stretches fairly far, and robbery convictions are usually upheld if what was taken was under the victim's control or responsibility and was not too distant from the victim. *Wilson v. State*, 207 Ga. App. 528, 529 (1) (428 SE2d 433) (1993). For property to be taken from the presence of the victim, it need not have been in actual contact with the body so long as it was under the victim's personal protection. Id. See also *Welch v. State*, 235 Ga. 243, 245 (1) (219 SE2d 151) (1975); *Bryant v. State*, 213 Ga. App. 301, 302 (444 SE2d 391) (1994).

In the instant case, there was testimony that Drains was on duty and responsible for the money in the cash register, that the store is very small and that Drains was standing near the cash register and the robbers when the armed robbery occurred. The jury was thus authorized to find that Drains was sufficiently close to the taking so that it occurred within her immediate presence or within the sphere of her protective influence. See generally *Anderson v. State*, 228 Ga. App. 617, 621 (3) (492 SE2d 252) (1997). The mere fact that the money was taken directly from Inez Stuckey does not eliminate the fact that the robbery also occurred in the immediate presence of Drains.

The general rule that allegations and proof must correspond is based upon the requirements (1) that the accused is definitely informed of the charges against him so he can present his defense

and not be surprised by the evidence at the trial, and (2) that he is protected against another prosecution for the same offense. *Harrison v. State*, 192 Ga. App. 690, 691 (1) (385 SE2d 774) (1989). Here, Mathis was definitely informed as to the armed robbery charge against him and he is protected against another prosecution for the same offense committed against Drains. The trial court therefore did not err in finding no fatal variance between the allegation in the indictment and the evidence.

3. Mathis contends the admission of Kelly's pretrial statement violated *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968). The court allowed a police officer to testify that Kelly stated he and someone else had discussed robbing the store earlier that day, he and someone else in fact committed the robbery, he went into the store and had the gun, he did most of the talking during the robbery, they left the store and they eventually returned to the housing project where the arrest occurred. Neither Kelly nor Mathis testified.

> [U]nless the statement is otherwise directly admissible against the defendant, the Confrontation Clause is violated by the admission of a nontestifying co-defendant's statement which inculpates the defendant by referring to the defendant's name or existence, regardless of the existence of limiting instructions and of whether the incriminated defendant has made an interlocking incriminating statement. A co-defendant's statement meets the Confrontation Clause's standard for admissibility when it does not refer to the existence of the defendant and is accompanied by instructions limiting its use to the case against the confessing co-defendant.

*Hanifa v. State*, 269 Ga. 797, 803 (2) (505 SE2d 731) (1998). Because Kelly's statement plainly refers to the existence of another defendant planning and participating in the crime, we find that admission of the statement violated Mathis' right of confrontation.

However, "(w)e will not reverse unless error is shown to be harmful. If overwhelming evidence against a defendant exists apart from the statement of the co-defendant, then any violation of *Bruton* can be said to be harmless beyond a reasonable doubt." (Citations and punctuation omitted.) *Kesler v. State*, 215 Ga. App. 553, 555 (1) (451 SE2d 496) (1994). Given Drains' eyewitness identification of Mathis, along with the money, masks, gloves, money wrappers and gun found in the possession of Mathis and Kelly, we find overwhelming evidence of Mathis' guilt. Accordingly, the court's erroneous admission of Kelly's statement was harmless beyond a reasonable

doubt. See *Hanifa v. State*, supra at 804 (2); *McDonald v. State*, 210 Ga. App. 689, 691 (2) (436 SE2d 811) (1993).

4. Mathis asserts that the trial court erred in denying his motion to sever his trial from that of Kelly. We find no merit to the assertion.

In deciding whether to grant a motion to sever, a trial court must consider whether a joint trial will create confusion regarding evidence or law; whether there is danger that evidence implicating one defendant will be considered against co-defendants, despite limiting instructions; and whether the co-defendants will press defenses that are antagonistic to one another. *Bryant v. State*, 270 Ga. 266, 269 (2) (507 SE2d 451) (1998). To show abuse of discretion a defendant must do more than raise the possibility that a separate trial would give him a better chance of acquittal. He must make a clear showing of prejudice that resulted in a denial of due process. See *Owen v. State*, 266 Ga. 312, 314 (2) (467 SE2d 325) (1996).

The issues in the instant case for jury resolution were simple and straightforward. Neither the number of defendants nor their trial tactics created any confusion as to either the evidence or the applicable law. There were only two defendants on trial and the primary issue was the identity of the robbers. Neither defendant testified so no issue exists as to conflicting co-defendant testimony. Mathis made no showing that Kelly would have been more likely to testify if they had been tried separately and that if Kelly had testified, his testimony would have tended to exculpate Mathis. Although Kelly's statement was introduced in evidence, his and Mathis' defenses were not antagonistic and, as determined above, the *Bruton* error did not affect the verdict. The trial court did not abuse its discretion when it denied the motion to sever. See *Owen*, supra.

5. Mathis contends the trial court erred by charging the jurors it would be their duty to convict if they believed the evidence showed beyond a reasonable doubt that the defendant is guilty. Mathis objects to the court's use of the phrase "duty to convict" in the instruction. "Although this instruction as given has been criticized, it does not constitute reversible error. Considered in the context of the charge as a whole, the single objectionable phrase did not misdirect the jury concerning their lawful obligations." (Citations and punctuation omitted.) *Redd v. State*, 232 Ga. App. 666, 667 (2) (c) (502 SE2d 467) (1998).

6. Mathis claims his trial counsel was ineffective in failing to advise him that as a recidivist he could be sentenced to life imprisonment for the armed robbery, and thus Mathis did not voluntarily and intelligently reject a plea offer made by the state. Mathis' ineffective assistance of counsel claim is not supported by the record.

To establish ineffectiveness, a defendant must prove that

trial counsel's performance was deficient and but for the deficiency a reasonable probability existed that the result of the trial would have been different. An error by counsel, even if professionally unreasonable, does not warrant reversal of a criminal conviction if it had no effect on the judgment.

(Citations and punctuation omitted.) *Michael v. State*, 235 Ga. App. 16, 18-19 (7) (508 SE2d 426) (1998).

Contrary to Mathis' claim, the record does not conclusively establish the alleged deficiency. Although at the start of the trial counsel told the court that the maximum armed robbery sentence would be 20 years, later, at the sentencing hearing, he noted that the armed robbery penalty would be life for a recidivist. Moreover, Mathis has not cited, and we have not found, any evidence in the record expressly showing that counsel failed to inform Mathis of the possible life sentence. At most, the record creates an inference, but no conclusive proof, that counsel did not tell Mathis he could receive a life sentence.

Nevertheless, even if we assume that counsel did not tell Mathis he could face a life sentence, the record is silent as to whether such information would have changed Mathis' decision to reject the guilty plea offer. Mathis concedes in his brief that the record is silent as to whether the conduct of his trial counsel affected the outcome of this case, so he asks us to remand the case for a hearing so that this issue can be determined. However, Mathis already had an opportunity to present evidence on the issue at his motion for new trial hearing.

A defendant must both raise the issue of counsel's inadequacy and request an evidentiary hearing on the issue at the first available opportunity, otherwise, he is barred from asserting a claim of inadequacy of counsel on appeal. See *Glover v. State*, 266 Ga. 183, 184 (2) (465 SE2d 659) (1996); *Dawson v. State*, 258 Ga. 380 (369 SE2d 897) (1988). Mathis was represented by his appellate counsel during the hearing on his motion for new trial. During that hearing, he was given an opportunity for an evidentiary hearing on his inadequacy of counsel claim. Once Mathis was given the opportunity to litigate this issue, he was required to present his evidence. His appellate counsel, however, only argued the issue and cited to a portion of the existing record. No witnesses were called to testify concerning this matter.

We will not remand this case merely to give Mathis an additional opportunity to attempt to prove his claim. Absent a showing that but for counsel's alleged error the result of the proceedings would have been different, we must affirm the trial court's finding that counsel was reasonably effective. See *Lloyd v. State*, 258 Ga. 645, 648 (2) (b) (373 SE2d 1) (1988).

*Judgment affirmed. Andrews and Ruffin, JJ., concur.*

DECIDED MAY 11, 1999 —
RECONSIDERATION DENIED MAY 25, 1999 — CERT. APPLIED FOR.

*Berry & Shelnutt, Jose E. Guzman,* for appellant.
*J. Gray Conger, District Attorney, Alonza Whitaker, Assistant District Attorney,* for appellee.