## A01A1209. SWANGER v. THE STATE.
(554 SE2d 207)

ELLINGTON, Judge.

A jury convicted Michael Swanger and his girlfriend, Melissa Golden,[1] of trafficking in amphetamine, OCGA § 16-13-31 (e), and possession of marijuana, OCGA § 16-13-30. Swanger challenges his convictions on appeal, contending the evidence was insufficient to support the jury's verdict and that the trial court erred in failing to give an instruction on a lesser included offense. Finding no error, we affirm.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the appellant (defendant here) no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

(Citations and punctuation omitted.) *Ellison v. State*, 233 Ga. App. 637 (504 SE2d 779) (1998).

Viewed in this light, the evidence[2] showed that, on August 6, 1998, Agents Witmer and Bridgeman of the Clayton County Drug Enforcement Task Force investigated reports of illegal drug activity at 1040 Lakeshore Drive, Jonesboro. Golden resided at this address, was at home when the officers arrived, and let them into the house. Although Golden refused to give her consent to a search, the officers saw a marijuana cigarette in plain view in the living room. While Agent Bridgeman left the scene to secure a search warrant, and Golden was transported to the police station, Agent Witmer remained to secure the house.

Shortly thereafter, Swanger drove his car into the driveway and unlocked the front door with a key. Agent Witmer ordered Swanger to "get down on the ground" and patted him down for weapons. The officer found a "bulge" in Swanger's right front pocket and, when he

---

[1] Golden, who also was convicted of obstruction of an officer, is not a party to this appeal. See *Golden v. State*, 250 Ga. App. 288 (551 SE2d 398) (2001).

[2] Other facts of this case are also presented in *Golden v. State*, 250 Ga. App. at 289.

removed it, discovered that it was marijuana in a plastic bag. Swanger was arrested for possession of marijuana. After Agent Bridgeman returned with the warrant, the officers executed the search. The officers found a large quantity of amphetamine in a duffel bag under the bed in the master bedroom, along with men's clothing. They also found several plastic sandwich bags of amphetamine hidden elsewhere in the bedroom. The amphetamine weighed a total of 401.8 grams and was valued at over $40,000. In the same bedroom, officers discovered postal scales, packaging materials, straws with "little scoops on the end," a beer can with a false bottom and marijuana residue inside, and sandwich bags — "the same kind of baggie in which [Swanger] had his marijuana packaged in." The officers also found marijuana in the bedroom and observed seven marijuana plants growing in the yard.

1. Swanger contends the evidence was insufficient to support his conviction for trafficking in amphetamine. Specifically, Swanger argues that the circumstantial evidence was insufficient to establish that he resided in the house where the drugs were found,[3] contending instead that he was "merely present" at the scene. Further, he claims that other people had equal access to the house, so that the circumstantial evidence did not exclude the possibility that someone else put the drugs in his bedroom without his knowledge.

In order to prove the crime of trafficking in amphetamine under OCGA § 16-13-31 (e), the State must show that the defendant knowingly sold, manufactured, delivered, or possessed 28 grams or more of the drug.

> In prosecuting [Swanger] for these offenses, the State relied on circumstantial evidence to show constructive possession of the [amphetamine] found in the house because there was no evidence establishing that he was in actual possession of the contraband. A finding of constructive possession must be based upon some connection between the defendant and the contraband other than spatial proximity. Evidence of mere presence at the scene of the crime, and nothing more to show participation of a defendant in the illegal act, is insufficient to support a conviction. Similarly, evidence merely showing that contraband was found in the residence occupied by the defendant is insufficient to support a conviction if it affirmatively appears from the evidence that other persons had equal access to the contraband and therefore an equal opportunity to commit the offense. And, where[,] as in this

---

[3] The undisputed evidence showed that Golden resided at the house.

case, the conviction is based on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt but shall exclude every other reasonable hypothesis save that of the guilt of the accused. Whether or not in a given case circumstances are sufficient to exclude every reasonable hypothesis save the guilt of the accused[ ] is primarily a question for determination by the jury. This of necessity is so, for we have no legal yardstick by which we can ordinarily determine what in a given case is a reasonable hypothesis, save the opinion of twelve upright and intelligent jurors. After having heard the witnesses and having observed them testify, they are more capable of judging of the reasonableness of a hypothesis produced by the evidence, or the lack of evidence, . . . than is a court of law. It is only where the evidence or a lack of evidence, tested by all human experience, establishes a reasonable hypothesis of innocence, that this Court may declare it so as a matter of law.

(Citations and punctuation omitted.) *Ellison v. State*, 233 Ga. App. at 638-639 (2). See also OCGA § 24-4-6; *Sutton v. State*, 245 Ga. App. 881, 882 (1) (539 SE2d 227) (2000); *Brown v. State*, 244 Ga. App. 440, 442-443 (2) (535 SE2d 785) (2000).

(a) In this case, there was sufficient circumstantial evidence to show that Swanger resided at 1040 Lakeshore Drive. Swanger had a key to the house. Two insurance bills, dated two months before Swanger's arrest, were addressed to Swanger at 1040 Lakeshore Drive, Jonesboro. A letter from Golden to Swanger stated in part as follows: "I hope you have a very good time while your [sic] in Florida, but not that much fun. *No need to worry about the home front*. It's already waiting on your return. Just if you would on the Fourth of July *make sure you smoke one on the beach for me*." (Emphasis supplied.) Further, Swanger's brother testified that Swanger kept clothes at the house. This evidence is sufficient to demonstrate that Swanger was more than a mere visitor and, in fact, jointly possessed the premises with Golden. *Cantrell v. State*, 204 Ga. App. 330, 331 (419 SE2d 141) (1992); *Morris v. State*, 161 Ga. App. 141-142 (288 SE2d 102) (1982); cf. *Morrison v. State*, 220 Ga. App. 151-152 (469 SE2d 686) (1996) (defendant had no key to the house and was unable to enter without co-defendant, a resident of the house). Since possession may be joint or exclusive, the fact that Golden and Swanger shared the master bedroom did not exculpate either defendant. *Andrews v. State*, 219 Ga. App. 808-809 (1) (466 SE2d 909) (1996); *Cantrell v. State*, 204 Ga. App. at 331.

Further, when he entered the house on the day of his arrest,

Swanger possessed marijuana. The marijuana was packaged in the same type of sandwich bag as found in the bedroom with drug trafficking paraphernalia, and marijuana plants were grown in plain view in the backyard. This evidence of Swanger's involvement in the drug trade supported a finding of his constructive possession of the other drugs in the house. *Sutton v. State*, 245 Ga. App. at 882 (1); *Brown v. State*, 244 Ga. App. at 442-443 (2).

Therefore, we find the circumstantial evidence presented was sufficient for the jury to find that Swanger was in joint, constructive possession of the amphetamine in the master bedroom.

(b) Swanger also contends that the circumstantial evidence did not exclude the hypothesis that others had access to the house and could have placed the duffel bag and amphetamine under the bed in the master bedroom.

> The equal access defense is based on the rule that merely finding contraband on premises occupied by a defendant is not sufficient to support a conviction if it affirmatively appears from the evidence that persons other than the defendant had equal opportunity to commit the crime. For the equal access rule to rebut the inference of defendant's possession of contraband, affirmative evidence must be presented that a person other than the defendant had equal access to the premises where the contraband was found. . . . Whether the evidence presented is sufficient to rebut the evidence of equal access is an issue for the jury.

(Citations and punctuation omitted.) *Andrews v. State*, 219 Ga. App. at 809 (1). See also *Tran v. State*, 246 Ga. App. 153, 159-160 (6) (539 SE2d 862) (2000). This equal access rule, however, generally applies to areas which are "open, notorious[,] and easily accessible to other persons." *Cantrell v. State*, 204 Ga. App. at 331.

In supporting Swanger's theory that the drugs belonged to someone else, Golden's father testified that the front door to the house was sometimes left unlocked. A friend of Golden and Swanger claimed that there was a "get together" at their house the night before they were arrested. Although several people supposedly attended this party, no other witnesses testified about it. The friend claimed that he saw a man named "Steve" bring a duffel bag into the house. The same witness admitted, however, that he never saw "Steve" take the duffel bag to the master bedroom and, in fact, stated that the bedroom door was shut during the get-together. He also testified that the guests were using illegal narcotics, including methamphetamine, in the defendants' presence.

Having heard evidence in support of Swanger's equal access the-

ory, the jury was authorized to reject it and find that, under these circumstances, no other person had an equal opportunity to place the amphetamine under the bed of the master bedroom. *Tran v. State*, 246 Ga. App. at 159 (6); *Andrews v. State*, 219 Ga. App. at 809 (1); see *Mathis v. State*, 204 Ga. App. 896, 897-898 (1) (420 SE2d 788) (1992) (access to a house by a mere visitor is not the same as equal access); see also *Morrison v. State*, 220 Ga. App. at 152 (1) (a) (this Court does not speculate about which evidence the jury chooses to believe or disbelieve).

2. Swanger also contends the trial court erred in failing to give his requested charge on the lesser included offense of possession of amphetamine, arguing there was slight evidence of his possession of less than 28 grams of the drug. See OCGA § 16-13-31 (e). Swanger does not specify what evidence allegedly supported a simple possession charge besides the fact that the 401.8 grams of amphetamine found in the house as a mathematical rule included less than 28 grams. See *Howard v. State*, 220 Ga. App. 579, 582-583 (2) (469 SE2d 746) (1996).

In this case, the jury rejected Swanger's "mere presence" and "equal access" theories and found him in joint, constructive possession of the amphetamine. See Division 1, supra. The large quantity of amphetamine found, 401.8 grams, was significantly more than that which supports a simple possession conviction under OCGA § 16-13-31 (e) and clearly constitutes trafficking. See *Adorno v. State*, 236 Ga. App. 588, 592 (4) (512 SE2d 703) (1999); cf. *Lumpkin v. State*, 245 Ga. App. 627, 629-630 (538 SE2d 514) (2000) (evidence showed that defendant possessed *exactly* 28 grams of cocaine, the minimum amount for a trafficking conviction). Accordingly, we find that, even if the trial court's failure to give the requested instruction was error, it is highly probable that the error did not contribute to the verdict. Therefore, such failure was harmless under these circumstances. See *Adorno v. State*, 236 Ga. App. at 592 (4); *Howard v. State*, 220 Ga. App. at 583 (2).

*Judgment affirmed. Johnson, P. J., and Ruffin, J., concur.*

DECIDED AUGUST 10, 2001.

*Patricia F. Angeli*, for appellant.
*Robert E. Keller, District Attorney, Staci L. Guest, Assistant District Attorney*, for appellee.