A02A1175. CAMERO v. THE STATE.
(570 SE2d 405)

RUFFIN, Judge.

A jury found Santos Camero guilty of felony theft by taking. Camero appeals his conviction, challenging the sufficiency of the evidence, the trial court's admission of similar transaction evidence, its failure to suppress his statement to police, and the court's ruling concerning a comment made by the prosecutor during closing argument. For reasons that follow, we affirm.

1. Viewed in a light most favorable to the jury's verdict,[1] the evidence showed that Camero's conviction stemmed from a drug deal in which he was supposed to sell 500 Ecstasy pills. The deal was set up by an individual named Terry Miller. On several prior occasions, Miller had bought Ecstasy from Camero both for personal use and resale. In this instance Miller was arranging for the purchase of 500 pills for five friends who were coming to Georgia from North Carolina.

When Miller's friends arrived in Georgia at around midnight, he brought them to an apartment complex where they met with Camero. They agreed on a price of $6,500 for the 500 pills. Because

---

[12] (Citation, punctuation and emphasis omitted.) *Byrd v. Rivenbark*, 183 Ga. App. 564, 565 (359 SE2d 433) (1987).

[1] See *Swanger v. State*, 251 Ga. App. 182 (554 SE2d 207) (2001).

Camero needed to get the Ecstasy from another location, the North Carolina group advanced him $3,200 and agreed to pay him the balance after he produced the pills and they determined that they were real.

Two individuals from the North Carolina group, James Donovan and Cedric Watkins, accompanied by Miller, followed Camero to another apartment complex where Camero was supposed to obtain the drugs. Camero drove into the complex, and Donovan, Watkins, and Miller waited outside in another car. Approximately 20 minutes later, Miller saw Camero leaving the complex in a Montero driven by Camero's girlfriend, Jessica Pittman. As Pittman sped away, Donovan, Watkins, and Miller followed. A high speed chase ensued, during which Donovan produced a gun and threatened to kill Miller. When both cars stopped at the same red light, Miller shouted to Camero, "they are going to kill me." Pittman then pulled her Montero behind a stopped police car, and Watkins abandoned the chase. Pittman told the police officer that Miller had been kidnapped, and she and Camero were escorted to the police station where they gave statements to officers.

Meanwhile, at approximately 1:30 a.m., after abandoning the chase, Donovan, Watkins, and Miller met up with the rest of the North Carolina group. The group members told Miller to call somebody and get their money or they were going to kill him. They eventually took Miller to a hotel room, where he spent the evening calling his mother to arrange for the money to be delivered to a local Western Union office at 8:30 that morning. As Miller and two of the North Carolina group were leaving the hotel to pick up the money, they were met by law enforcement officers who arrested the entire group. Among the items police recovered from the hotel room where the group was staying was $600 in counterfeit currency.

While investigating the incident later that morning, Officer David Aguilar interviewed Camero. According to Aguilar, Camero admitted that he "licked" the North Carolina buyers — he never had any pills to sell them and merely intended to steal their money. Camero claimed that the money he took was counterfeit. However, a member of the North Carolina group, Mathew Burns, testified that he contributed $1,000 of his own money to purchase the drugs, that it was real money, and that he never got it back. In addition, Miller testified that he saw Donovan hand money to Camero.

Camero asserts that the evidence is insufficient to support his conviction for felony theft by taking because it did not show that he took more than $500. Camero argues that, notwithstanding Burns' testimony that he contributed $1,000 in real currency toward the purchase money, there was no evidence that this $1,000 was part of the money that Donovan handed to him. Camero similarly argues

that, although Miller testified that he saw Donovan hand Camero a "wad of money" that he thought was $3,200, Miller never counted the money, and he thus could not be sure of the amount. In Camero's mind, these circumstances, in addition to evidence that the money found in the hotel room was counterfeit, all rendered the evidence against him insufficient to prove that he took more than $500.

Camero's argument ignores the appellate standard of review and the evidence of his guilt.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the appellant . . . no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[2] . . . As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.[3]

For the jury to find that Camero committed felony theft by taking, there must have been evidence that he unlawfully took or appropriated more than $500 in property from another person and that he intended to deprive the person of that property.[4] Viewed in favor of the jury's verdict, the testimony of Burns and Miller established that Camero took more than $500 in money. Burns' testimony also proved that he contributed $1,000 of the stolen money. And Camero's own statement to Officer Aguilar showed that Camero acknowledged taking the money and that he intended to keep it. Accordingly, the evidence was sufficient under the *Jackson* standard.

2. In four enumerations of error, Camero asserts that the trial court erred in admitting evidence of the prior drug transactions between himself and Miller. The record shows, however, that Camero waived these assertions. Although Camero objected to this evidence at the pretrial hearing conducted under Uniform Superior Court Rule 31.3, he was required to also object when the State presented the evidence at trial.[5] Because Camero failed to object at trial, he has not preserved the asserted issues for appeal.[6]

---

[2] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] *Swanger*, supra.

[4] See OCGA §§ 16-8-2; 16-8-12 (a) (1).

[5] See *Young v. State*, 269 Ga. 478, 479 (3) (499 SE2d 60) (1998); *Foster v. State*, 254 Ga. App. 255, 256-257 (3) (562 SE2d 191) (2002).

[6] See *Young*, supra; *Foster*, supra.

3. Camero also waived review of his assertion that the trial court erred in failing to grant a new trial based on a purportedly improper comment made by the prosecutor during his closing argument. The transcript shows that, during closing argument, the assistant district attorney stated: "Mr. Camero not only sells drugs, which was not contradicted in any fashion, only by counsel, and, again, that is not evidence. T. J. Miller said he sells drugs." Camero's counsel interjected, "Judge, he never gave a time. He didn't even give a date." On appeal, Camero contends that the prosecutor's statement inappropriately commented on his failure to present evidence.

" 'In order to preserve an objection upon a specific ground for appeal, the objection must be made at trial upon that specific ground. Objecting on specific grounds waives the grounds not asserted.' "[7] Because Camero did not raise his appellate argument he asserts at trial, he waived the argument for appeal.[8]

4. Finally, Camero asserts that the trial court erred in admitting his custodial statement that he took the money because the statement was not freely and voluntarily made. We disagree.

Prior to trial, the court conducted a lengthy *Jackson-Denno*[9] hearing to determine whether the statement was freely and voluntarily made. The evidence showed that Camero arrived at the police station at approximately 4:00 a.m. Officer Dallas Stidd, who initially interviewed Camero concerning the reported kidnapping, testified that when Camero first came to the police station, he was not under arrest, but was considered a witness because "he made the outcry that his friend had been kidnapped." According to Stidd, after speaking with Camero, the officers "wanted him to hang around to try and help with any leads that might come up on where his friend might be." Camero testified that, while at the police station, he did not sleep, but was "lounging at a table" and had "laid down on the carpet."

Later that morning, after the North Carolina group was arrested, Officer Aguilar was called in to take over the investigation. Aguilar interviewed Camero, who was now suspected of participating in a drug deal, at approximately 1:00 or 1:30 p.m. Both Aguilar and Stidd testified that, before the interview, Aguilar informed Camero of his *Miranda*[10] rights and that Camero appeared to understand such rights. The officers' testimony also reveals that Camero was coherent, spoke clearly, and did not seem to be under the influence of any

---

[7] *Clark v. State*, 248 Ga. App. 88, 91 (3) (545 SE2d 637) (2001).

[8] See id.

[9] See *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

[10] See *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

substances, and that no threats or promises were made to him. Although Camero agreed to talk with Aguilar and made the statement at issue here, he later asserted his right to an attorney, and the questioning ceased.

Based on this evidence, the trial judge found that "the statement was freely and voluntarily given after a knowing and intelligent waiver of [Camero's] rights," and ruled it admissible at trial. Camero asserts that the court erred because the evidence showed that he was suffering from a lack of sleep and food. On appeal, however, we review the trial court's factual findings under a clearly erroneous standard.[11] Here, the trial court's findings are supported by the testimony of both Aguilar and Stidd. Accordingly, the findings are not clearly erroneous and will be upheld.[12]

*Judgment affirmed. Pope, P. J., and Barnes, J., concur.*

DECIDED AUGUST 21, 2002.

*Lawrence Lewis*, for appellant.
*Daniel J. Porter, District Attorney, Donald P. Geary, Assistant District Attorney*, for appellee.

