A02A1685. CUTKELVIN v. THE STATE.
(574 SE2d 883)

JOHNSON, Presiding Judge.

Kevin Cutkelvin was indicted on 14 charges in connection with the armed robbery of a Family Dollar store. A jury found Cutkelvin guilty of eight of those charges, namely: armed robbery, aggravated assault, kidnapping, three counts of possession of a firearm during the commission of a crime, carrying a concealed weapon, and carrying a firearm without a license. He appeals from the judgment of conviction entered on the verdicts, challenging the sufficiency of the evidence to support several of the verdicts, the imposition of consecutive sentences, and the trial court's failure to treat two of the offenses as having merged into the armed robbery conviction. Because there was no evidence to support a guilty verdict as to the charge that

---

Cutkelvin carried a firearm without a license, we reverse the judgment of conviction entered on that verdict. And inasmuch as two of the convictions merged with the armed robbery conviction, the trial court erred in entering convictions and imposing sentences on the two lesser included offenses. Cutkelvin's remaining enumerations of error lack merit, so the convictions entered as to the other charges are affirmed.

Viewed in a light most favorable to the verdict, the evidence shows that the manager of a Family Dollar store announced to customers that the store would be closing for the evening. One customer left, and only the manager, a cashier, and two men remained in the store. The men, later identified as Cutkelvin and Alfred Washington, came from the back of the store with a shopping cart. As the manager rang up the items in the men's cart, Cutkelvin walked around to the other clerk's register. Washington displayed a gun and announced that the store was being robbed. Washington took the money from the manager's register and, holding a gun to her head, took her to the store office and ordered her to open the safe and give him the money. As the manager complied with Washington's demands, she heard Cutkelvin, who was still at the cash register, loudly tell the other clerk to "hang up that phone" and call her a "bitch." All of the money was taken from both cash registers, though Washington only took money from one of the registers. After the manager gave Washington the money in the safe, the men ran out of the store together. Later, Cutkelvin's friend turned the gun over to police, stating he believed it was used in the robbery.

At trial and at a preliminary hearing, the manager identified Cutkelvin as one of the robbers and identified a pistol as the one used in the robbery.

Washington's girlfriend testified that Washington and his best friend, Cutkelvin, visited her home three days before the robbery. Cutkelvin brought a pistol with him, which he had been carrying in a pouch, and showed it to Washington in the girlfriend's presence. After the robbery, the girlfriend told police that the men had talked about a robbery days before this robbery occurred. She testified that a few days after the robbery, Washington admitted to her that he pointed a gun at one of the store clerks, and she saw Cutkelvin driving a new car. Before, Cutkelvin had been using public transportation.

The state also introduced Cutkelvin's statement to police. After being advised of his *Miranda* rights, Cutkelvin told police that Washington approached him about robbing the store with a knife, that Cutkelvin said he could get Washington a gun, that he obtained the gun from a friend, and that the two men walked to the store together. Cutkelvin reported that he told Washington he no longer wanted to

go through with the robbery, but that Washington told him it was "too late now." According to Cutkelvin's statement, Washington was the one who had the gun, yelled at and pointed the gun at the clerks, and took the money. Cutkelvin added that Washington pointed the gun at him and ordered him to stand still while he committed the crimes. The men left the store together. Outside, Cutkelvin told Washington he had nothing to do with the robbery, but Washington disagreed. The men parted ways, and Cutkelvin picked up money Washington accidentally dropped as he fled the scene.

1. Cutkelvin contends the evidence was insufficient to support the convictions for armed robbery, possession of a firearm during the commission of armed robbery, kidnapping, and possession of a firearm during the commission of kidnapping. We disagree.

To support this enumeration, Cutkelvin, who did not testify at trial, points to his pre-trial statement to police that on the way to the store he told Washington that he was not ready to rob the store, but that Washington told him it was too late, that he could not "chicken out," and that Cutkelvin had "no choice now" but to commit the crime and that Washington pointed the gun at him in the store when he tried to back out of the robbery. Cutkelvin also points to Washington's testimony that Washington decided to commit the crimes at "the spur of the moment," that Cutkelvin had loaned him the gun but did not know that the gun would be used in a robbery, and that Cutkelvin knew nothing about the robbery when they went into the store. Cutkelvin also points to the girlfriend's inability at trial to identify the gun or the pouch in which it was being stored, and inconsistencies between the girlfriend's trial and pre-trial statements.

On appeal from a criminal conviction, the evidence must be viewed in a light most favorable to the verdict, and the appellant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[1] Conflicts in the testimony of the witnesses, including the state's witnesses, are a matter of credibility for the jury to resolve.[2] As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the state's case, the jury's verdict will be upheld.[3]

Here, there was evidence that Cutkelvin, knowing that Washington planned to rob the store, provided Washington with a gun, that the men discussed the robbery before going to the store, that they

---

[1] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Swanger v. State*, 251 Ga. App. 182 (554 SE2d 207) (2001).

[2] *Swanger*, supra.

[3] Id.

entered the store together and remained in the store until the other customers were gone, that Cutkelvin yelled for the store clerk to hang up the phone while the robbery was in progress, that money was taken from the second register by someone other than Washington, that the manager was forced to go to the office at gunpoint, that the two men fled together, that the men split the proceeds, and that the next day Cutkelvin was driving a new car.

While mere presence at the scene of a crime is not sufficient evidence to convict, criminal intent can be inferred from companionship, presence, and conduct before, during, and after an offense.[4] A party to a crime may be convicted for the crime even though he did not commit it directly.[5] And, whether or not a defendant is coerced into acting is a question for the trier of fact.[6] The jury resolved each of these issues against Cutkelvin, and, as its verdict meets the criteria of *Jackson v. Virginia*, it will not be disturbed on appeal.[7]

2. Cutkelvin contends that the evidence was insufficient to support a finding that he carried a concealed weapon. We disagree.

At trial, Washington identified one of the state's exhibits as "the bag that carried the pistol." He added that when he first saw the bag, Cutkelvin had it in his possession. Washington's girlfriend testified that when Cutkelvin came to her house, he took a pistol out of a pouch and that, after cleaning the gun, Cutkelvin placed it back inside the pouch. Cutkelvin told police that he got the gun from his friend and then rode the bus to meet Washington. A rational trier of fact could have found from the evidence the essential elements of the crime of carrying a concealed weapon beyond a reasonable doubt.[8]

3. The state concedes that there was no evidence to support the jury's finding that Cutkelvin was guilty of carrying a firearm without a license. Therefore, the judgment of conviction as to that offense must be reversed.

4. Cutkelvin contends that Count 5, aggravated assault with intent to rob the store's manager, and Count 6, possession of a firearm during commission of the crime of aggravated assault with intent to rob the manager, should have merged into Count 1, armed robbery of the manager. The state agreed at trial that the charges merged. On appeal, the state does not dispute Cutkelvin's contention that the convictions merged, but points out that the sentences were to be served concurrently. It is clear that the offenses merged, and

---

[4] *Abonza v. State*, 252 Ga. App. 104, 105 (555 SE2d 781) (2001).

[5] See *Johnson v. State*, 269 Ga. 632, 634 (501 SE2d 815) (1998).

[6] *Aleman v. State*, 227 Ga. App. 607, 609 (1) (489 SE2d 867) (1997).

[7] See id.

[8] See *Ely v. State*, 222 Ga. App. 651 (1) (475 SE2d 647) (1996).

the convictions entered and sentences imposed on Counts 5 and 6 must be vacated.

If the state uses up all the evidence that the defendant committed one crime in establishing another crime, the former crime is included in the latter as a matter of fact under OCGA § 16-1-6 (1). Where the offenses so merge, the entry of separate convictions for both offenses is barred by OCGA § 16-1-7 (a), which prohibits multiple convictions for the same conduct.[9] Likewise, where one crime is included in the other, a defendant may not be sentenced on both convictions.[10]

In this case, the evidence used to convict Cutkelvin of aggravated assault with intent to rob and possession of a firearm during the commission of that crime was also used to convict him of the armed robbery.[11] While a defendant may be tried for all three offenses under such circumstances, he may not be sentenced for them all.[12] It follows that the crimes of aggravated assault with intent to rob and the possession of a firearm during the commission of that crime merged with the armed robbery offense, and the trial court erred in entering convictions on and sentencing Cutkelvin for the two lesser offenses. The convictions for and sentences imposed on Counts 5 and 6 are hereby vacated.[13]

5. Cutkelvin's argument that the trial court was not authorized to impose a five-year sentence on Count 10, possession of a firearm during the commission of the offense of kidnapping, to run consecutively to Count 9, kidnapping, is in direct contravention of OCGA § 16-11-106 (b). That section expressly authorizes the sentence imposed.[14] This enumeration is therefore without merit.

*Judgments affirmed in part, reversed in part and vacated in part. Blackburn, C. J., and Miller, J., concur.*

DECIDED DECEMBER 4, 2002.

*Mark J. Nathan*, for appellant.

---

[9] *Kelly v. State*, 188 Ga. App. 362, 363 (3) (373 SE2d 63) (1988).

[10] *Chadwick v. State*, 236 Ga. App. 199, 202-203 (3) (511 SE2d 286) (1999); *Padgett v. State*, 205 Ga. App. 576, 577-578 (2) (423 SE2d 411) (1992).

[11] See generally *Ruffin v. State*, 252 Ga. App. 289, 291 (2) (556 SE2d 191) (2001).

[12] Id.

[13] See generally *Kelly*, supra; *Head v. State*, 202 Ga. App. 209, 210 (2) (413 SE2d 533) (1991).

[14] See *Busch v. State*, 271 Ga. 591, 593-594 (523 SE2d 21) (1999).

*Spencer Lawton, Jr.*, District Attorney, *Ronald M. Adams*, Assistant District Attorney, for appellee.