**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

June 12, 2013

# In the Court of Appeals of Georgia

A13A0768. AVILA v. THE STATE.

MILLER, Judge.

Following a trial, a Forsyth County jury convicted Orlin Avila of burglary (OCGA § 16-7-1), three counts of armed robbery (OCGA § 16-8-41), and four counts of aggravated assault (OCGA § 16-5-21). The trial court sentenced Avila to eight twenty-year sentences, to run concurrently. On appeal, Avila challenges the sufficiency of the evidence supporting his conviction on one of the armed robbery counts (Count 3). Discerning no error, we affirm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys a presumption of innocence. We do not weigh the evidence or resolve issues of witness credibility, but merely determine whether the evidence was sufficient to find the defendant guilty beyond a reasonable doubt.

(Citation omitted.) *Liger v. State*, 318 Ga. App. 373 (734 SE2d 80) (2012). So viewed, the evidence shows that on the evening of August 15, 2010, Arnulfo Manzano ("Arnulfo") answered a knock on the door of the Forsyth County mobile home in which he resided with his brother, Adrian Manzano ("Adrian"), Carlos Cortes, and Maria Moto. When he opened the door, he saw four men standing on the porch and a black Crown Victoria parked on the street. The men started asking for someone Arnulfo did not know. Arnulfo found the situation suspicious and was trying to step back inside when one of the men pulled out a gun and forced his way into the house. The man pushed Arnulfo against a wall and held a gun to his head. One of the other men on the porch also entered the house armed with a gun. The men forced Arnulfo into a chair, handcuffed his hands behind his back, and started asking for money.

Around this time, Cortes, Moto, and Moto's three-year old son arrived home. When Moto and her son entered the house, one of the men pointed a gun at them. The men forced Cortes into a chair and bound his hands and covered his mouth with duct tape. When one of the men discovered Adrian and his five-year old son sleeping in a bedroom, he forced Adrian and his child into the living room at gunpoint. The men made Adrian sit in a chair and used duct tape to tie his hands and cover his mouth.

2

The men locked Moto and the children in the bathroom. Arnulfo testified that a third intruder then entered the house. One of the men became angry with Adrian and Cortes for disobeying instructions and sprayed them in the face with pepper spray. At that point, the men separated Cortes from Arnulfo and Adrian.

The men ransacked the home and took Cortes's wallet from his pocket and a necklace from Adrian's neck. The men also took two phones belonging to Arnulfo, iPods belonging to Carlos and Moto, and more jewelry, including a ring Arnulfo remembered Adrian wearing that day, a bracelet, and a watch. The men became scared and left when someone knocked on the door.

Once the men were gone, the victims borrowed a phone from neighbors to call 911. . Approximately an hour and a half later, an Alpharetta police officer who had received a be on the lookout notice from Forsyth County regarding armed robbery suspects traveling in a black Crown Victoria pulled over a car that matched the description and bore an incorrect tag. Jairo Delossantos was the driver, Brian Bonilla was the front passenger, and Avila was in the back seat. Police subsequently searched the vehicle pursuant to a search warrant and recovered, among other things, a nine-millimeter pistol, a revolver, and a bag containing various items including pepper spray. In the front seat, police found the stolen phones and iPods. They recovered

3

Adrian's ring and necklace and a bracelet and watch belonging to the victims from the pocket of a jacket located in the backseat.

Bonilla and Delossantos, who were indicted with Avila, entered guilty pleas and testified against Avila at trial. Bonilla testified that on August 15, 2010, the co-defendants drove to Forsyth County armed with two guns and pepper spray and intending to rob a house. The men targeted the house because an acquaintance told Bonilla that they would find money and computers there. Bonilla and Delossantos testified that Avila entered the home armed with a gun.

In his sole enumeration of error, Avila argues that the evidence fails to support his conviction on Count 3 of the indictment, which alleged that Avila "with intent to commit a theft, did unlawfully take jewelry, cash and a camera, the property of Maria Moto, from the person and immediate presence of Maria Moto" by use of a firearm. According to Avila, the State failed to present competent evidence that any of the items listed in Count 3 were taken from Moto. Avila's argument rests on the erroneous assumption that in order to prove armed robbery, the State was required to present evidence that property identified in the indictment was taken directly from Moto's person. To the contrary, as discussed below, the State could prove armed

4

robbery with evidence that property was taken from Moto's immediate presence while she was forcibly detained.

Pursuant to OCGA § 16-8-41 (a), a person commits armed robbery "when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon." It is immaterial whether an indictment alleges that property is taken from the victim's person, immediate presence, or, as here, both, because "the victim's person includes the entire area within his immediate presence." (Citation and punctuation omitted.) *Felder v. State*, 270 Ga. 641, 643 (2) (514 SE2d 416) (1999).

> It has long been recognized that when perpetrators forcibly cause the victim to be away from the immediate presence of the property at the time it is stolen, the offense of armed robbery can still be committed. Thus, the immediate presence element of the offense of armed robbery has been held to extend fairly far, and robbery convictions are upheld even out of the physical presence of the victim.

(Footnotes and punctuation omitted.) *Wilson v. State*, 291 Ga. App. 69, 70-71 (1) (661 SE2d 221) (2008). See also *Young v. State*, 290 Ga. 392, 396 (4) (721 SE2d 855) (2012). The State is not required to prove theft of *all* the items the indictment alleged were taken from the victim. *Booker v. State*, 242 Ga. App. 80, 82 (1) (a) (528 SE2d 849) (2000).

In this case, the State presented evidence that Avila and his co-defendants ransacked the victims' residence, including Moto's bedroom, and took various items from the premises in addition to the necklace and ring taken from Adrian and the wallet taken from Cortes. Among the items recovered from the co-defendants' get-away car were a watch and bracelet, which the lead investigator testified were returned to the victims. Given that these items were taken from the home while Moto was forcibly detained in the bathroom, the State presented sufficient evidence that such jewelry was taken from her immediate presence. See *Ham v. State*, 303 Ga. App. 232, 238 (1) (b) (692 SE2d 828) (2010) (evidence was sufficient to support appellant's conviction of armed robbery of victim who was held at gunpoint in living room while valuables were taken from her bedroom); *Whitley v. State*, 293 Ga. App. 605, 606 (667 SE2d 447) (2008) (armed robbery conviction supported by evidence in case in which teenage victim was tied up while his home was ransacked and his computer was taken).

Avila argues that the State did not prove that any jewelry taken from the victims' home belonged to Moto. "[T]he gravamen of the offense of armed robbery," however, "is the taking of items from the possession of another by use of an offensive weapon and not the identification of the specific owner of the item taken." (Footnote

and punctuation omitted.) *Ham*, supra, 303 Ga. App. at 237 (1) (b); *Ward v. State*, 304 Ga. App. 517, 521-523 (1) (a) (696 SE2d 471) (2010) (stating, in affirming appellant's multiple armed robbery convictions arising from home invasion, that "it does not matter exactly whose property was taken so long as it was taken from a person or the immediate presence of another") (citation and punctuation omitted). Whether the watch and bracelet taken from the home belonged to Maria or another victim, the rule that the allegations of the indictment and proof at trial must correspond was not violated, and the State presented sufficient evidence that Moto was "subjected to the robbers' exercise of actual force by the use of an offensive weapon so as to induce the relinquishment of the property of another." *Ham*, supra, 303 Ga. App. at 237 (1) (b) (affirming appellant's convictions of armed robbery of both boyfriend and girlfriend regardless of whether State proved that items taken belonged to both victims, as alleged in indictment).

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*

7