**SECOND DIVISION
ANDREWS, P. J.,
MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 18, 2014**

# In the Court of Appeals of Georgia

A14A0647. BRADFORD v. THE STATE.

ANDREWS, Presiding Judge.

Following a bench trial, Toledo Junius Bradford, Jr. was convicted of three counts of armed robbery (OCGA § 16-8-41 (a)), three counts of possession of a knife during the commission of a crime (OCGA § 16-11-106), and one count of misdemeanor obstruction of an officer (OCGA § 16-10-24 (a)). Bradford appeals from the denial of his motion for new trial, as amended, challenging the sufficiency of the evidence and the effectiveness of counsel for failure to demur to the indictment. For the reasons discussed below, we affirm two of Bradford's convictions for armed robbery and vacate a third.

On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys the presumption of innocence; moreover, an appellate

court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, [443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979)]. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

(Footnotes and punctuation omitted.) *Camero v. State*, 257 Ga. App. 109, 111 (1) (570 SE2d 405) (2002).

So viewed, the evidence shows that in the early morning of July 24, 2008, Bradford and his longtime friend, co-defendant Lemar Davey, pushed their way into a Warner Robins gift shop demanding money. Shop employee Elsa Laffitte and two video poker customers, Maria Rehig and Siatragul Jriyporn, were present. As they entered the shop dressed in black and masked, Bradford and Davey knocked Jriyporn to the floor, told Laffitte to give them a trash bag, and, while Bradford held a meat cleaver, ordered her to empty the contents of the cash register into the trash bag. This accomplished, Davey attempted to break into a video poker machine, but got only the $50 in cash which Rehig had at the machine she was playing. While Davey did so, he ordered Laffitte and Rehig to join Jriyporn on the floor. Bradford guarded the door

he and Davey had entered and held the meat cleaver over the fearful women. All told, Bradford and Davey took "$834.41 in cash and a $200.00 check."

Unable to get into the video machine, Davey, who testified incident to his plea of guilty, moved the women into the bathroom out of concern for their safety given the meat cleaver which Bradford held. After having Bradford put the meat cleaver down, Davey had the women come out, and ordered Rehig and Jriyporn onto the floor once more. Permitted to sit in a chair opposite the bathroom door because she complained of a back problem, Laffitte observed a friend slip into the shop unobserved. Suspicious that the store was being robbed on seeing Laffitte's situation, the friend called police. The responding officer arrived shortly thereafter. Bradford and Davey were arrested as they fled the scene.

1. Bradford contends that the evidence is insufficient to support his conviction of armed robbery on Counts 1, 2, and 3 of the indictment because there was no evidence that the meat cleaver was used as an offensive weapon. With respect to Count 3 of the indictment, Bradford also argues that the State's failure to prove that "any cash or other property was taken from the person or immediate presence of alleged victim Jriyporn" constitutes a further basis for reversing his conviction as to her.

Armed robbery occurs "when, with intent to commit theft, [a person] takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon." OCGA § 16-8-41 (a). The "statute clearly contemplates that the offensive weapon be used as a concomitant to a taking which involves the use of actual force or intimidation (constructive force) against another person." (Footnote and punctuation omitted.) *Jackson v. State*, 309 Ga. App. 24, 27-28 (1) (a) (709 SE2d 44) (2011). Likewise, the statute requires, among other elements, that the accused "take property of another from the person or the immediate presence of another." (Punctuation omitted.) *Gutierrez v. State*, 290 Ga. 643, 644 (723 SE2d 658) (2012). See also *Smith v. State*, 244 Ga. App. 165, 168 (4) (534 SE2d 903) (2000); *State v. Watson*, 239 Ga. App. 482, 484 (2) (520 SE2d 911) (1999); *Mathis v. State*, 238 Ga. App. 218, 219 (2) (517 SE2d 578) (1999) ("For property to be taken from the presence of the victim, it need not have been in actual contact with the body so long as it was under the victim's personal protection."), overruled on other grounds, *Wilson v. State*, 277 Ga. 195 (586 SE2d 669) (2003).

(a) Counts 1 and 2.

4

In this case, the evidence revealed that Bradford entered the gift shop wielding a meat cleaver. Evidence also indicated that Bradford held the cleaver over his head. The perpetrators then made repeated demands for money and moved the three victims across the gift shop, all while Bradford either handled the cleaver or had it readily accessible. Indeed, the concern of harm from the cleaver was apparently great enough that Bradford's confederate urged him to put the cleaver away. As a result of these actions, money was taken from Laffitte and Rehig's immediate presence. See OCGA § 16-8-41 (a).

Plainly, Bradford and Davey stole the money at issue from the immediate presence of Laffitte and Rehig. See OCGA § 16-8-41(a). Laffitte and Rehig were present inside the gift shop and held in fear of Bradford's meat cleaver, whether in hand or readily accessible, when the money was taken from the cash register and the video poker machine. Even had the money been taken during the time the women were forced into the bathroom,

> it has long been recognized that when perpetrators forcibly cause the victim to be away from the immediate presence of the property at the time it is stolen, the offense of armed robbery can still be committed. Thus, the immediate presence element of the offense of armed robbery has been held to extend fairly far, and robbery convictions are upheld even out of the physical presence of the victim.

5

(Citation and punctuation omitted.) *Jennings v. State*, 292 Ga. App. 149, 152 (1) (a) (664 SE2d 248) (2008). Accordingly, we conclude that any rational trier of fact could have found the essential elements of armed robbery, as charged in Counts 1 and 2 of the indictment, beyond a reasonable doubt. *Camero*, supra, 257 Ga. App. at 111 (1).

(b) Count 3.

Bradford's conviction on Count 3 of the indictment (charging that Bradford "did with intent to commit theft, take cash, the property of another, from the person or immediate presence of Siatragul Jriyporn") is a much closer question. Like Laffitte and Rehig, Jriyporn was present when Bradford and Davey stole the money from the immediate presence of the three victims. Jriyporn was also subjected to the fear of Bradford's meat cleaver when the money was taken in her immediate presence. What is lacking from the record is any evidence of a taking of property belonging to Jriyporn or over which she exercised some level of control; rather, the State relies upon evidence that Jriyporn was simply in the vicinity when property belonging to others was taken. As discussed below, such a showing is insufficient, as armed robbery requires a taking of "property of another" from the person or the immediate presence of another. See OCGA § 16-8-41 (a). See also *Gutierrez*, supra, 290 Ga. at 644; *Smith*, supra, 244 Ga. App. at 168 (4); *Watson*, supra, 239 Ga. App. at 484 (2);

6

*Mathis*, supra, 238 Ga. App. at 219 (2) ("For property to be taken from the presence of the victim, it need not have been in actual contact with the body *so long as it was under the victim's personal protection*.") (emphasis added).

At first glance, the State's argument finds some level of support. See *Avila v. State*, 322 Ga. App. 225, 227 (744 SE2d 405) (2013); *Ward v. State*, 304 Ga. App. 517, 522 (1) (a) (696 SE2d 471) (2010); *Harp v. State*, 302 Ga. App. 17, 18 (690 SE2d 424) (2010). In *Harp*, the defendant and another person approached two victims outside the victims' home and demanded money. Both victims denied having any money. Id. at 17. The male victim then gave the female victim (his girlfriend) several papers from his shirt pocket and asked her to "show them I don't have no money." Id. The papers included a $20 bill, which the female victim gave to the defendant. Id. The defendant was charged with, and ultimately convicted of, two counts of armed robbery. Id. On appeal, the defendant argued that there was insufficient evidence to convict him of two counts of armed robbery. This Court affirmed, first finding that there was sufficient evidence to convict for the armed robbery of the female victim. Id. at 18. Of note, however, this Court also found "[the male victim] was a victim of armed robbery because the $20 bill was taken from his immediate presence at gunpoint." Id. Our holding recognized the principle that "if property is taken from the

7

*immediate presence* or the actual or constructive possession of more than one victim, 'the defendant may be charged with the robbery of each victim.'" (Emphasis added). Id. In addition, we noted "immediate presence" is to be construed broadly. Id.

In *Ward*, armed assailants demanded money from "men talking inside" and there was evidence that the defendant "pointed [a] gun 'at the men.'" 304 Ga. App. at 518. Evidence also demonstrated that items were taken from "the men or 'them'" and that each victim had personal property stolen from him. Id. Similarly, in *Avila*, this Court noted that property had been stolen from several victims; the defendant argued that there had been no evidence that jewelry taken from the premises belonged to a particular victim. 322 Ga. App. at 227. However, we noted that the victim in question had been locked in a bathroom while the assailants ransacked the residence and stole various items, including jewelry, that was later returned to the victim. Id. at 226, 227.

A close reading of *Harp* and related authorities reveals that they are distinguishable from this case and that, as a result, Bradford's conviction on Count 3 cannot stand. First, unlike Jriyporn, the male victim in *Harp* exercised some possessory interest in the property that was taken. Likewise, the robbery in *Harp*,

8

occurred in front of the victims' residence, as opposed to a store or other remote location. See, e.g., *Avila*, supra, 322 Ga. App. at 227 (armed robbery conviction affirmed where assailants ransacked apartment, including victim's room, and stole jewelry while victim was forcibly detained elsewhere); *Ward*, supra, 304 Ga. App. at 522 (1) (a) (evidence sufficient for armed robbery convictions where assailants took various property from different occupants); *Ham v. State*, 303 Ga. App. 232, 237 (1) (b) (692 SE2d 828) (2010) (evidence sufficient for armed robbery convictions of two victims in apartment, where evidence showed joint possession of property taken, regardless of ownership of property).

Moreover, the binding sinew between *Harp*, *Ward*, and *Avila* is some possessory interest in the property stolen - an element which is lacking in this instance. Here, Jriyporn had no control over the cash register or the money Rehig used to play the video poker machine. To that end, affirming Bradford's conviction on Count 3 would ignore the principle that "[r]obbery is a crime against *possession*, and is not affected by concepts of ownership." (Citation and punctuation omitted.) (Emphasis added.) *Harp*, supra, 302 Ga. App. at 18. Also distinguishable are those cases in which multiple employees of a business were robbed, as the employees each had access to, or constructive possession of, the property that was taken. See *Green*

9

*v. State*, 265 Ga. App. 126, 128-129 (2) (592 SE2d 901) (2004); *Kelly v. State*, 234 Ga. App. 893, 894 (2) (508 SE2d 228) (1998).

Our conclusion is buttressed by other authorities in which, for whatever reason, defendants were convicted of single counts of armed robbery where multiple prospective victims were present. See, e.g., *Thompson v. State*, 320 Ga. App. 150 (739 SE2d 434) (2013) (single conviction for armed robbery of apartment although multiple victims present); *Taylor v. State*, 318 Ga. App. 115 (1) (733 SE2d 415) (2012) (armed robbery of store with one employee and three patrons present); *Jones v. State*, 302 Ga. App. 147, 149, 150 (1) (b) (690 SE2d 460) (2010) (single conviction for armed robbery of restaurant although multiple employees present). Likewise, we are confident that the General Assembly, had it wished to include within the definition of armed robbery instances of the taking the property from the possession of one victim in the presence of a second purported victim who exercised no possessory interest, could have done so. Compare, e.g., OCGA § 16-8-41 (a) with Ala. Code Ann. § 13A-8-43 (a) (2) ("A person commits the crime of robbery in the third degree if in the course of committing a theft he: . . . [t]hreatens the imminent use of force against the person of the owner *or any person present* with intent to compel

10

acquiescence to the taking of or escaping with the property.") (Emphasis added). See also Ala. Code Ann. § 13A-8-41.

In conclusion, inasmuch as the record contains no evidence of a taking of property either in Jriyporn's possession or under Jriyporn's personal protection,[1] we conclude that Bradford's conviction for the armed robbery of Jriyporn must be vacated. However, the evidence may support Bradford's conviction for other offenses. See OCGA §§ 16-4-1, 16-8-41 (a); *Watson*, supra, 239 Ga. App. at 484 (2). Accordingly, the trial court's judgment on Count 3 is vacated and, because Bradford's convictions were imposed following a bench trial, the trial court is directed to consider any lesser included offenses of Count 3 which may be warranted by the evidence. See OCGA § 16-4-3; *Barr v. State*, 302 Ga. App. 60, 64 (3) (b) (690 SE2d 693) (2010); *Joyner v. State*, 267 Ga. App. 309, 311 (2) (599 SE2d 286) (2004) ("In a bench trial, the trial judge sits as the factfinder and must consider a lesser included

---

[1] Our holding in this regard is not inconsistent with certain language in *Ward* in view of our analysis above and the partial quoting of the armed robbery statute in *Ward*. See *Ward*, supra, 304 Ga. App. at 522 ("Thus, it does not matter exactly whose property was taken so long as it was taken from a 'person or the immediate presence of another.'").

offense if there is some evidence, no matter how slight, that shows that the defendant committed a lesser offense.").

2. Bradford also contends that trial counsel rendered ineffective assistance by failing to demur to the armed robbery counts of the indictment, these as alleging the commission of armed robbery by "use of a knife" without "indicat[ing] that the knife was an offensive weapon or that any offensive weapon was involved." This claim of error is without merit.

In order to support a claim of ineffective assistance, the burden is on the defendant to establish that

> (1) his attorney's representation in specified instances fell below an objective standard of reasonableness and (2) [that] there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. The trial court's determination that an accused has not been denied effective assistance of counsel will be affirmed on appeal unless that determination is clearly erroneous.

(Footnote and punctuation omitted.) *Grimes v. State*, 291 Ga. App. 585, 589 (2) (662 SE2d 346) (2008). Pretermitting the question of whether the knife at issue was used offensively, see *Hambrick v. State*, 174 Ga. App. 444, 445 (1) (330 SE2d 383) (1985) ("Whether or not the [knife] in question constituted a[n] . . . offensive weapon was

12

for the [trial judge's] determination [as the trier of fact]." (punctuation omitted.))," no deficient performance of counsel obtains in this case upon counsel's failure to file a general demurrer to the armed robbery counts of the indictment.

> In determining the sufficiency of an indictment to withstand a general demurrer, the following test is applied: If all the facts which the indictment charges can be admitted, and still the accused be innocent, the indictment is bad; but if, taking the facts alleged as premised, the guilt of the accused follows as a legal conclusion, the indictment is good. An indictment which charges the offense in the language of the defining statute and describes the acts constituting the offense sufficiently to put the defendant on notice of the offense with which he is charged survives a general demurrer.

(Footnote and citation omitted.) *Jackson v. State*, 316 Ga. App. 588, 592 (2) (730 SE2d 69) (2012).

The facts set out in the indictment, alleging that Bradford committed armed robbery by taking the property of another from the immediate presence of the victims by using a knife, cannot be admitted and Bradford still found innocent of the offense of armed robbery as charged. Consequently, the indictment was sufficient to put Bradford on notice of the charges against him. Because the armed robbery counts of the indictment were sufficient to survive a general demurrer, counsel's failure to file

a general demurrer thereto cannot be deemed deficient performance. The failure to file a meritless motion does not constitute deficient performance. *Cobb v. State*, 309 Ga. App. 70, 78 (4) (c) (709 SE2d 9) (2011).

*Judgment affirmed in part and vacated in part with direction. McFadden and Ray, JJ., concur.*